OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendant-Appellant, Norman Hale, appeals the decision of the Monroe County Court that found him guilty of multiple counts of cruelty to animals in violation of R.C. 959.13(A)(4). Hale argues that this statute is unconstitutionally vague, that his conviction is against the manifest weight of the evidence, and that the trial court imposed improper sanctions upon him.
 {¶ 2} We disregard Hale's constitutional argument since he failed to provide legal argument in support of this claim. Hale's argument that his conviction is against the manifest weight of the evidence also is meritless since the evidence in the record supports the trial court's decision that he recklessly failed to provide these dogs with wholesome exercise. Finally, the trial court did not abuse its discretion when imposing the sanctions since the conditions of his probation were related to the underlying offense and served the ends of rehabilitation. For these reasons, the trial court's decision is affirmed.
 Facts {¶ 3} Hale ran a kennel out of his home. He kept between ninety and one hundred dogs in four by six wire cages in four buildings on his property, with multiple animals in each cage. Hale would try exercising these animals every day or every other day. When he wasn't present, a friend would exercise the dogs for him, but the friend only believed that Hale owned approximately forty dogs.
 {¶ 4} In March 2004, the Monroe County Humane Society received a complaint about Hale's property. Apparently, a dog had hung itself on a fence at Hale's home and had begun to decay. A few days later, after another complaint, Humane Society representatives and the Monroe County dog warden visited Hale's home. He told them that he first noticed the dead dog that morning. The dog warden then inspected Hale's kennel and, based on the conditions of the dogs, he doubted that the dogs were being exercised regularly.
 {¶ 5} On March 30, 2004, Hale was charged with twelve counts of animal cruelty under R.C. 959.13(A)(4), a second degree misdemeanor. After a bench trial, the trial court found Hale guilty of each count. It then sentenced Hale to thirty days in jail, suspended that sentence, and placed Hale on two years of probation. As conditions of that probation, the trial court revoked Hale's kennel license and ordered that he reduce his collection of dogs to no more than four animals.
 Constitutionality of R.C. 959.13(A)(4) {¶ 6} In his third of three assignments of error, Hale argues:
 {¶ 7} "O.R.C. 959.13(A)(4) is unconstitutional as it is vague and ambiguous and does not establish a standard under which kennel owners may operate free of the imposition of arbitrary standards."
 {¶ 8} R.C. 959.13(A)(4) provides that "[n]o person shall * * * [k]eep animals other than cattle, poultry or fowl, swine, sheep, or goats in an enclosure without wholesome exercise and change of air * * *." According to Hale, an average person will not be able to tell what constitutes "wholesome exercise" or "change of air." Therefore, he claims that the statute is unconstitutionally vague.
 {¶ 9} Hale's argument in support of this assignment of error is woefully deficient. App.R. 16(A)(7) requires an appellant to support each of his assignments of error with "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2).
 {¶ 10} Hale's argument that a statute enacted by the Ohio Legislature is unconstitutional is only five sentences long and contains no citations to any authority. Instead, it merely makes the conclusory statement that the phrases "wholesome exercise" and "change of air" are vague because they are undefined. Hale does not even attempt to engage in the complex analysis involved any time someone challenges a statute as void for vagueness.
 {¶ 11} The Ohio Supreme Court has repeatedly stated that courts should avoid answering constitutional questions unless it is absolutely necessary to do so. See State v. Talty,103 Ohio St.3d 177, 2004-Ohio-4888, at ¶ 9; Norandex, Inc. v. Limbach,69 Ohio St.3d 26, 28, 1994-Ohio-0536; In re Boggs (1990),50 Ohio St.3d 217, 221; Hall China Co. v. Public UtilitiesCommission (1977), 50 Ohio St.2d 206, 210. We are very hesitant to do so when the party advocating a statute's unconstitutionality does not bother to present a coherent legal argument supporting their claim. Accordingly, we will disregard this assignment of error.
 Manifest Weight of the Evidence {¶ 12} In his first assignment of error, Hale argues:
 {¶ 13} "The trial court's guilty verdict is against the manifest weight of the evidence and created such a manifest miscarriage of justice that the conviction must be reversed."
 {¶ 14} Hale contends that all of the evidence in the record shows that the animals were healthy and marketable. Therefore, he believes there is no evidence that they were not receiving wholesome exercise and/or change of air and that he could not have been convicted of a violation of R.C. 959.13(A)(4).
 {¶ 15} When reviewing whether a conviction was against the manifest weight of the evidence, we must "examine whether the evidence produced at trial `attains the high degree of probative force and certainty required of a criminal conviction.'" Statev. Tibbetts, 92 Ohio St.3d 146, 163, 2001-Ohio-0132 quotingState v. Getsy, 84 Ohio St.3d 180, 193, 1998-Ohio-0533. In order to do this, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. "`Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis sic.) State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-0052, quoting Black's Law Dictionary (6 Ed. 1990) 1594. "`The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id. at 387, 485, quoting State v. Martin (1983)20 Ohio App.3d 172, 175.
 {¶ 16} In this case, Hale was convicted of violating R.C.959.13(A)(4). As stated above, that statute provides that "[n]o person shall * * * [k]eep animals other than cattle, poultry or fowl, swine, sheep, or goats in an enclosure without wholesome exercise and change of air * * *." Id. Although R.C. 959.13(A)(4) does not itself provide a particular degree of culpability, caselaw has clearly established that the State must prove that the defendant acted with a reckless state of mind. See State v.Howell, 137 Ohio App.3d 804, 813; State v. Dresbach (1997),122 Ohio App.3d 647, 652; State v. Bergen (1997),121 Ohio App.3d 459, 461; State v. Myers (1993), 87 Ohio App.3d 92, 100.
 {¶ 17} In this case, there is no question that Hale intentionally kept animals other than cattle, poultry or fowl, swine, sheep, or goats in an enclosure. Likewise, there does not appear any serious question regarding whether Hale provided those animals with a change of air. Therefore, the only real question in this case is whether Hale recklessly denied these dogs wholesome exercise.
 {¶ 18} On March 10, 2004, the Monroe County Humane Society received a phone call reporting that a beagle had hung itself over a fence on Hale's property. Before they could inspect Hale's kennel, it received another phone call informing it that the dog was still hanging in the same spot on March 14, 2004. Representatives of the Humane Society accompanied a dog warden to Hale's property that day. Hale told them that the dog had hung itself the previous night and agreed to cut it down. At this time, the dog had already started decaying; it was losing hair and its skin was turning black.
 {¶ 19} The group then observed the kennels the dogs were kept in. These kennels were approximately four-foot by six-foot wire cages raised above the floor and each kennel contained five or six animals. The dog warden testified that he saw between nine and twelve of these kennels in Hale's barn, with some other kennels in other buildings on Hale's property. Hale told the group that he owned approximately one hundred dogs. The group did not see anyone exercising the dogs while they were on Hale's property that day. The dog warden stated that based on his observation of the animals, they were not exercised often. However, he testified that the dogs looked healthy.
 {¶ 20} In his testimony, Hale stated that he did not exercise all of the dogs every day. However, he later stated that he tried to have every dog exercised every day. Hale further testified that he did not notice the dead dog until the morning of March 14th. One of Hale's friends testified that Hale "usually takes dogs out every other day" to run them around in a chicken pen or in a field. This friend would exercise Hale's dogs for him when Hale would be gone and that sometimes he would be gone for a week or two at a time. However, that friend also stated that he believed that Hale only had about forty dogs, not ninety to one hundred dogs.
 {¶ 21} Based on this evidence, the trial court did not lose its way when it determined that Hale recklessly denied these dogs wholesome exercise. First, there are reasons to doubt Hale's credibility since he stated that the dead dog had died the night before, even though independent observers could tell that the dog had been hanging dead for some time. Second, the friend who would exercise Hale's dogs for him testified that he would exercise about forty dogs and that he would do this every other day. This means that between fifty and sixty dogs were not getting any exercise when Hale was gone. Third, the independent observers, such as the dog warden, stated that he saw the conditions of these dogs and did not believe they were getting adequate exercise. This evidence supports the trial court's decision. Therefore, Hale's first assignment of error is meritless.
 Sentencing {¶ 22} In his second assignment of error, Hale argues:
 {¶ 23} "The trial court imposed penalties and sanctions that are not authorized or sanctioned by the Ohio Revised Code."
 {¶ 24} Hale contends that the trial court improperly ordered that his kennel license be revoked and that he forfeit all but one of his dogs. According to Hale, the trial court's authority to punish for a violation of R.C. 959.13(A)(4) is defined by R.C.959.99 and that R.C. 959.99 does not authorize either of these punishments.
 {¶ 25} R.C. 959.99(D) provides as follows:
 {¶ 26} "Whoever violates division (A) of section 959.13 of the Revised Code is guilty of a misdemeanor of the second degree. In addition, the court may order the offender to forfeit the animal or livestock and may provide for its disposition, including, but not limited to, the sale of the animal or livestock. If an animal or livestock is forfeited and sold pursuant to this division, the proceeds from the sale first shall be applied to pay the expenses incurred with regard to the care of the animal from the time it was taken from the custody of the former owner. The balance of the proceeds from the sale, if any, shall be paid to the former owner of the animal."
 {¶ 27} Courts have previously addressed the type of sanctions a trial court can impose upon an offender under this section. InState v. Sheets (1996), 112 Ohio App.3d 1, State v. Barker
(1998), 128 Ohio App.3d 233, and State v. Vasquez (June 5, 1998), 6th Dist. No. F-97-026, the offenders were found guilty of violating R.C. 959.13(A) and were ordered to forfeit all of the animals under their control even though they were only convicted of being cruel to some of those animals. The appellate courts rejected the same argument Hale makes now.
 {¶ 28} "A trial court may impose requirements on an offender as a condition of probation `[i]n the interests of doing justice, rehabilitating the offender, and ensuring the offender's good behavior.' R.C. 2951.02. A trial court has broad discretion in determining conditions of probation and will not be subject to reversal on appeal absent an abuse of that discretion. State v.Jones (1990), 49 Ohio St.3d 51, 52, 550 N.E.2d 469, 470. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149.
 {¶ 29} "Appellant was convicted of ten violations of R.C.959.13(A)(1), which provides that `[n]o person shall * * * impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water.' R.C. 959.99(D) states:
 {¶ 30} "`Whoever violates [R.C. 959.13(A)] is guilty of a misdemeanor of the second degree. In addition, the court may order the offender to forfeit the animal or livestock and may provide for its disposition including, but not limited to, the sale of the animal or livestock. If an animal or livestock is forfeited and sold pursuant to this division, the proceeds from the sale shall first be applied to pay the expenses incurred with regard to the care of the animal from the time it was taken from the custody of the former owner. The balance of the proceeds from the sale, if any, shall be paid to the former owner of the animals.'
 {¶ 31} "Appellant claims that the trial court abused its discretion by setting probationary conditions that exceeded the divestiture power of R.C. 959.99(D). Appellant argues that R.C.959.99(D) provides for the forfeiture of only `the animal or livestock' that was treated cruelly in violation of R.C.959.13(A), rather than all animals or livestock that one who violates R.C. 959.13(A) possesses. Therefore, appellant claims that the trial court was authorized, pursuant to R.C. 959.99(D), to order the divestiture of only ten of appellant's horses, rather than all one hundred twenty-two.
 {¶ 32} "In State v. Jones, supra, the Ohio Supreme Court upheld a condition of probation that the defendant not associate or communicate with anyone under the age of eighteen. We note that the defendant in State v. Jones could not have been barred from associating or communicating with minors as part of his sentence. State v. Jones demonstrates that conditions of probation may be imposed which were not authorized pursuant to sentencing. Rather than focusing exclusively on whether a condition of probation was authorized pursuant to the Revised Code for purposes of sentencing, `[c]ourts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation.' Id., 49 Ohio St.3d at 53,550 N.E.2d at 470.
 {¶ 33} "We therefore reject appellant's assertion that the trial court was limited by R.C. 959.99(D) when it ordered divestiture and other similar conditions as part of probation. The probationary conditions that appellant challenges certainly have a relationship to the crime of which he was convicted. Appellant failed to properly feed his horses and the probationary conditions prohibit him from owning or possessing horses. The conditions also relate to future criminality by preventing appellant from being in a position, as owner or possessor of a horse, where he would be responsible for the animal's feeding. Finally, the conditions relate to rehabilitation by impliedly permitting appellant to own and possess horses in the future. We therefore find that the trial court did not abuse its discretion in its formulation of conditions for appellant's probation. SeeState v. Drakulich (Sept. 30, 1992), Portage App. No. 91-P-2352, unreported, 1992 WL 274613. Appellant's third assignment of error is overruled." Sheets at 8-9.
 {¶ 34} This reasoning is directly on point. R.C. 959.99(D) classifies a violation of R.C. 959.13(A) as a second degree misdemeanor. R.C. 2929.22(A) allows a trial court to impose probation for a second degree misdemeanor. In Jones, the Ohio Supreme Court has stated that trial courts can impose probation sanctions which 1) are reasonably related to rehabilitating the offender; 2) have some relationship to the crime of which the offender was convicted; and, 3) relate to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation. The probation conditions imposed in this case, revoking Hale's kennel license and ordering him to reduce his collection of dogs, clearly appear to meet this standard. Accordingly, the trial court did not abuse its discretion when it imposed these sanctions and Hale's arguments to the contrary are meritless.
 Conclusion {¶ 35} Hale tries challenging the constitutionality of R.C.959.13(A)(4). We disregard that assignment of error since Hale does not provide a legal argument supporting his challenge to the statute's constitutionality. Hale also argues that his conviction is against the manifest weight of the evidence, but the evidence in the record does not demonstrate that the trial court clearly lost its way. Finally, Hale argues that the trial court improperly sanctioned him. However, the sanctions the trial court imposed were all conditions of his probation which were related to the underlying offense and served the ends of rehabilitation. Accordingly, the judgment of the trial court is affirmed.
Donofrio, P.J., concurs.
Vukovich, J., concurs.