RICHLAND COUNTY BAR ASSOCIATION *v.* BOURDEAU.

[Cite as *Richland Cty. Bar Assn. v. Bourdeau*,
109 Ohio St.3d 158, 2006-Ohio-2039.]

(No. 2005–2045—Submitted January 11, 2006—Decided May 10, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Julia M. Bourdeau of Crestline, Ohio, Attorney Registration No. 0071697, was admitted to the practice of law in Ohio in 1999.

{¶ 2} On December 6, 2004, relator, Richland County Bar Association, charged respondent with violating DR 7–104(A)(1), which prohibits a lawyer from communicating with another party whom he or she knows to be represented by counsel about the subject of the representation without that counsel's consent. A panel of the Board of Commissioners on Grievances and Discipline heard the cause, found that respondent had violated DR 7–104(A)(1), and recommended that she be publicly reprimanded. The board adopted the finding of misconduct and the recommended sanction.

{¶ 3} In 2004, respondent represented a husband in a domestic relations case in Richland County, Ohio. Respondent's client's wife had filed for divorce against him, alleging abuse and eventually obtaining a protective order. By the time a final hearing was scheduled in the divorce, respondent's client had been granted temporary custody of their infant daughter because his wife had fled with the daughter to avoid visitation and was concealing their location.

{¶ 4} Attorney Joann Hoard represented the wife and reported to respondent and the domestic relations court that she was having difficulty contacting her client. Hoard also warned that that difficulty might warrant her withdrawal. About one week prior to a final hearing scheduled for February 3, 2004, however, the wife called Hoard and asked her to continue the representation.

{¶ 5} Hoard appeared on the wife's behalf at the hearing, but her client did not attend. Hoard called her client's brother as a witness, and on cross-examination, respondent asked how the brother had been communicating with his sister, whose whereabouts he professed not to know. The brother replied that he had spoken with his sister on the telephone, and he provided a cell phone number for his sister, who at the time was staying in a domestic violence shelter. During a recess in the hearing, respondent called the number, apparently hoping to learn something to discredit the brother's testimony.

{¶ 6} Respondent testified before the panel about the message that she had left after calling the number. She recalled hearing an automated greeting, after which she had left her name, her office telephone number, and the reason for her call—to advise that the divorce was in the final stages, custody of the couple's

child was at stake, and the wife's attorney was considering withdrawal. Respondent asked Hoard's client to return the call "if she wanted to work anything out."

{¶ 7} Respondent did not believe that the brother had disclosed the actual telephone number of his sister and expected that if any recipient of her message called back, it would be to advise that she had called a wrong number. Hoard's client did receive respondent's message, however, and the message frightened her and caused her to think that respondent might be lulling her into a visitation arrangement in order to seize physical custody of the couple's baby. Hoard's client paraphrased the message for the panel:

{¶ 8} "Hello, this is Julia Bourdeau. I'm here at the courthouse. We're in the middle of your divorce hearing. Your brother just testified that you are not opposed to your husband seeing your child if you didn't have to do the transport or something like that. And I'm here at the courthouse. We'll be here till at least 4:30. Call me here. * * * Or call me any time at my office to negotiate visits."

{¶ 9} Hoard's client immediately contacted her attorney about respondent's message. Several days later, Hoard confronted respondent about the inappropriate call and asked respondent not to speak with the wife again. Shortly before the final divorce hearing was to reconvene on February 13, 2004, however, Hoard's client advised Hoard that respondent had said directly to her that she "could have prevented all this."

{¶ 10} Hoard reported respondent's conduct to a magistrate and relator. In her defense, respondent could not recall making the cited remark to Hoard's client, and she did not believe that she would have made such a remark. Respondent suggested that Hoard's client may have misunderstood her statement and to whom it was directed.

{¶ 11} The panel and board found that respondent had contacted Hoard's client knowing that she was represented by counsel and thereby violated DR 7–104(A)(1). Noting that respondent had no prior disciplinary record, the panel and board recommended that respondent be publicly reprimanded for her misconduct. Neither relator nor respondent objected to that disposition.

{¶ 12} On review, we agree that respondent committed the cited misconduct and that a public reprimand is appropriate. Respondent is therefore publicly reprimanded for her violation of DR 7–104(A)(1). Costs are taxed to respondent.

Judgment accordingly.

Moyer, C.J., Resnick, Pfeifer, Lundberg Stratton, O'Connor, O'Donnell and Lanzinger, JJ., concur.

Brown, Bemiller, Murray, McIntyre, Vetter & Heck, L.L.P., and William Travis McIntyre, for relator.

Julia M. Bourdeau, pro se.