DISCIPLINARY COUNSEL *v.* SARTINI.

DISCIPLINARY COUNSEL *v.* NIEMI, A.K.A. TARIGHATI.

[Cite as *Disciplinary Counsel v. Sartini & Tarighati,* 114 Ohio St.3d 205, 2007-Ohio-3601.]

(No. 2007–0337—Submitted April 17, 2007—Decided July 18, 2007.)

---

**Per Curiam.**

{¶ 1} This court admitted respondent Thomas L. Sartini of Jefferson, Ohio, Attorney Registration No. 0001937, to the practice of law in Ohio in 1975. We admitted respondent, Ariana E. Niemi, a.k.a. Tarighati, of Jefferson, Ohio, Attorney Registration No. 0039372, to the practice of law in Ohio in 1987. The Board of Commissioners on Grievances and Discipline recommends that we publicly reprimand respondents because they caused a criminal defendant's mother to communicate a plea offer to the defendant outside the presence of and without the prior consent of the defendant's counsel. On review, we find that a public reprimand is appropriate for respondents' professional misconduct.

{¶ 2} Relator, Disciplinary Counsel, filed complaints against respondents, charging them each with four violations of the Code of Professional Responsibility. Respondents submitted answers, and their cases were consolidated upon relator's motion after neither respondent objected. A three-member panel of the board heard the cause on January 8, 2007, and the parties submitted agreed stipulations on the pertinent facts, the violation, and the applicable mitigation factors. Respondent Sartini also stipulated to the recommended sanction.

{¶ 3} The panel found that respondents had violated DR 7–104(A)(1) (prohibiting a lawyer from communicating with a party about a matter when the lawyer knows the party is represented by another lawyer absent prior consent of the other lawyer) and recommended that respondents be publicly reprimanded. In accordance with the parties' stipulations, relator dismissed the other charged violations. The board adopted the panel's findings of fact, conclusions of law, and recommendation and further recommended that the cost of the proceedings be taxed to respondents.

{¶ 4} None of the parties objects to the board's report.

## Misconduct

{¶ 5} Respondent Sartini is the Ashtabula County Prosecuting Attorney and has held that office since 1997. Respondent Tarighati started working as the chief assistant prosecuting attorney under respondent Sartini in January 1997 and worked in that capacity until October 2005, when she left the prosecutor's office to enter private practice.

{¶ 6} In February 2004, Sonny Hatfield drove his motor vehicle through a stop sign and hit a vehicle driven by Sharon Kingston, killing her instantly. By Hatfield's own admission, he had consumed a significant amount of alcohol, had smoked marijuana, and had used cocaine the evening before the accident.

{¶ 7} In July 2004, the Ashtabula County Grand Jury indicted Hatfield on charges of aggravated vehicular homicide and vehicular homicide for his conduct relating to Kingston's death. In June 2005, the grand jury indicted Hatfield on a separate charge of trafficking in drugs. Hatfield was arrested and was incarcerated at the county jail while he awaited trial in the aggravated-vehicular-homicide case. Joseph Humpolick, an attorney with the county public defender's office, represented Hatfield on the criminal charges.

{¶ 8} Respondent Tarighati informed Humpolick of the state's plea offer in the cases against Hatfield—a six-year prison sentence in exchange for Hatfield's guilty plea to aggravated vehicular homicide and trafficking in drugs. Around July 8, 2005, after discussing the state's offer with Hatfield, Humpolick informed respondent Tarighati that Hatfield had rejected the offer.

{¶ 9} Later that day, as part of their trial preparation, respondents met with Hatfield's mother, Rhonda, to verify Hatfield's claim that he was heading from his house to his mother's house when the accident occurred. During the meeting, respondents disclosed to Rhonda that Hatfield had admitted to police that he had used drugs and alcohol the night before the crash. Rhonda became very upset and emotional and remained in that condition throughout the rest of the meeting. She reminded respondents that they had successfully prosecuted her other son, Jason, for aggravated murder, and she was upset at the prospect of having Sonny also incarcerated.

{¶ 10} In response to Rhonda's question concerning what her son was facing, respondents informed her that Hatfield had rejected the state's plea offer of six years in prison. Rhonda stated that she felt the offer was fair and asked to speak to her son to see whether he would reconsider the offer. Respondents then arranged for Rhonda to meet Hatfield in the county jail so she could speak to him about the state's offer. Rhonda felt that respondents were doing her a favor, and she never felt pressured or coerced. Hatfield told his mother that he had already rejected the six-year offer, but that he would consider an offer of two or three years.

{¶ 11} Rhonda then relayed Hatfield's counteroffer to respondents, who asked her whether Hatfield would consider a plea offer of five years' imprisonment. Respondents incorrectly advised Rhonda that Hatfield would be eligible for early judicial release after six months. But respondents further noted that the state would oppose any early release and that it would be up to the judge to decide the issue. Respondent Sartini gave Rhonda respondents' cellular telephone numbers and suggested that she call either respondent when she had an answer from Hatfield. During this time, respondents made no attempt to contact Hatfield's counsel, Humpolick.

{¶ 12} Rhonda returned to the jail and advised her son of the new offer of five years in prison with the opportunity to apply for early judicial release after six months. Hatfield accepted the offer on the condition that he be released on his own recognizance pending sentencing. As instructed by respondents through Rhonda, Hatfield called Humpolick and advised him of the state's offer and the personal-recognizance-bond condition of the plea.

{¶ 13} Humpolick then called respondent Tarighati and stated that Hatfield was willing to plead guilty to the charges of aggravated vehicular homicide and trafficking in drugs in exchange for a five-year sentence and a personal-recognizance bond pending sentencing. Respondent Tarighati approved the terms of the plea, but did not inform Humpolick of Rhonda's involvement in the plea negotiations.

{¶ 14} Later on July 8, 2005, the Ashtabula County Court of Common Pleas held a hearing on Hatfield's guilty plea. At the hearing, Humpolick advised Hatfield that he would have to serve four years—not six months—before he would be eligible for judicial release. The court accepted Hatfield's guilty plea and released him on a personal-recognizance bond pending sentencing.

{¶ 15} On July 13, 2005, Humpolick, on behalf of Hatfield, filed a motion to withdraw his guilty plea because respondents had "contacted Defendant's mother, Rhonda Hatfield, and pressured her to influence her son to accept the terms of a negotiated plea bargain without [counsel's] knowledge and approval and prior to his client informing [counsel] that he would take it." The court held a hearing on the motion and granted it. In so holding, the court found that "Rhonda Hatfield became, in effect, the agent of the State of Ohio in inducing her son to accept the five year plan" and that Hatfield's right to counsel had been violated.

{¶ 16} In March 2006, the state reduced the plea offer to four years in prison, but Hatfield rejected it after initially accepting it. Hatfield pleaded guilty to trafficking in drugs and was sentenced to 18 months in prison. In May 2006, a jury found Hatfield guilty of aggravated vehicular homicide. The common pleas court sentenced Hatfield to eight years in prison for the latter conviction, to be served concurrently with his sentence for drug trafficking.

{¶ 17} We accept respondents' stipulations to the charged misconduct and agree with the board's conclusion that by conducting a plea negotiation with Hatfield through his mother and without the participation of Hatfield's counsel, respondents violated DR 7–104(A)(1).

## Sanction

{¶ 18} We have repeatedly held that violations of DR 7–104(A)(1) warrant a public reprimand. See *Toledo Bar Assn. v. Mansour–Ismail* (1999), 86 Ohio St.3d 27, 28, 711 N.E.2d 223 ("As in comparable cases involving a violation of DR 7–104(A)(1), a public reprimand is an appropriate sanction"); *Richland Cty. Bar Assn. v. Bourdeau,* 109 Ohio St.3d 158, 2006-Ohio-2039, 846 N.E.2d 525, ¶ 12; *Toledo Bar Assn. v. Dewey* (2001), 92 Ohio St.3d 419, 750 N.E.2d 1118; *Cleveland Bar Assn. v. Rossi* (1998), 81 Ohio St.3d 195, 196, 690 N.E.2d 501; *Trumbull Cty. Bar Assn. v. Makridis* (1996), 77 Ohio St.3d 73, 671 N.E.2d 31.

{¶ 19} The parties stipulated to the presence of three mitigating factors. See Section 10(B)(2) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). Respondents do not have any prior disciplinary record, they have been cooperative throughout the disciplinary process, and they have a positive character and reputation in the legal and general communities. BCGD Proc.Reg. 10(B)(2)(a), (d), and (e). In particular, the board emphasized

the numerous character letters praising respondents' exemplary ethical conduct and professionalism. The board also noted that no harm had come to Hatfield because of respondents' misconduct and found that the misconduct had "occurred solely out of compassion for Rhonda Hatfield, whose maternal distress caused [respondents] distress, which in turn, caused them to abandon their heads for their hearts."

{¶ 20} Despite the presence of these mitigating factors, respondent Sartini stipulated to the relator's recommended sanction of a public reprimand. Although respondent Tarighati did not stipulate to that sanction, she did agree that if the board found that a sanction was warranted, the sanction should be a public reprimand. Ultimately, after the board recommended a public reprimand as the sanction for respondents' misconduct, neither respondent objected.

{¶ 21} Upon consideration, we agree with the board that a public reprimand is the appropriate sanction for respondents' admitted violation of DR 7–104(A)(1). Applying this sanction here promotes the rule's preeminent purposes—"to preserve the proper functioning of the legal system and to 'prevent situations in which a represented party may be taken advantage of by adverse counsel.'" *Iowa Supreme Court Attorney Disciplinary Bd. v. Box* (Iowa 2006), 715 N.W.2d 758, 764, quoting *Monceret v. Bd. of Professional Responsibility* (Tenn.2000), 29 S.W.3d 455, 459, construing a similarly worded disciplinary rule. Respondents are hereby publicly reprimanded. Costs are taxed to respondents.

Judgment accordingly.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Assistant Disciplinary Counsel, for relator.

Kegler, Brown, Hill & Ritter Co., L.P.A., Christopher J. Weber, and Geoffrey Stern, for respondent Sartini.

Richard C. Alkire Co., L.P.A., Richard C. Alkire, and Dean Nieding, for respondent Tarighati.