CINCINNATI BAR ASSOCIATION *v.* DEARFIELD.

[Cite as *Cincinnati Bar Assn. v. Dearfield,*

130 Ohio St.3d 363, 2011-Ohio-5295.]

*Attorneys at law—Misconduct—Failure to deposit unearned fees in a trust account—Designating a fee as nonrefundable—Conditioning refund on client's withdrawal of grievance—Failure to cooperate as aggravating factor—Stayed suspension.*

(No. 2010-2254—Submitted May 25, 2011—Decided October 19, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-036.

_____

**Per Curiam.**

{¶ 1} Respondent, G. Timothy Dearfield of Loveland, Ohio, Attorney Registration No. 0039684, was admitted to the practice of law in Ohio in 1988. On April 12, 2010, relator, the Cincinnati Bar Association, filed a complaint charging Dearfield with violating the Rules of Professional Conduct with regard to his representation of Jeffery M. Hallet. On May 11, 2010, Dearfield filed an answer denying the alleged violations. The case was heard before a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio. Finding that Dearfield violated several Rules of Professional Conduct, the board recommends a one-year suspension with six months stayed. We hold that a one-year stayed suspension is the proper sanction.

I. Misconduct

{¶ 2} Jeffery Hallet hired Dearfield to file bankruptcy on his behalf. Dearfield's standard charges were $3,274 for a Chapter 13 bankruptcy, which included a $700 retainer and $274 in court costs, and $1,099 for a Chapter 7

bankruptcy, which included an $800 retainer and $299 in court costs. Hallet signed an agreement with Dearfield that stated: "All retainer payments are good for one year from the date made and will be credited to the attorney fees and court costs then applicable for the filing. Any monies paid on retainer are *non-refundable* except in unusual circumstances and only at the discretion of an attorney employed by the Law Firm." (Emphasis added.)

**{¶ 3}** On June 30, 2009, Hallet wrote Dearfield a $700 check for "bankruptcy filing." Approximately two weeks later, Hallet wrote an additional $399 check to Dearfield for "court costs." Both checks were deposited in Dearfield's usual business account.

**{¶ 4}** Hallet and Dearfield had numerous conversations about whether Hallet should file Chapter 7 or Chapter 13 bankruptcy. Eventually, Hallet decided not to file bankruptcy, because he had negotiated a payment plan with his creditors. Thus, Hallet sent a letter dated August 15, 2009, discharging Dearfield as his bankruptcy attorney and requesting an itemized bill, a refund of the $399 in courts costs, and his documents.

**{¶ 5}** Dearfield believed that his firm had invested at least $1,099 worth of work in preparing Hallet's bankruptcy case and that he could use Hallet's $399 to offset that expense. Thus, Dearfield considered Hallet's $399 as earned fees and initially refused Hallet a refund.

**{¶ 6}** Hallet filed a grievance against Dearfield with the relator, the Cincinnati Bar Association. In late 2009 or early 2010, relator notified Dearfield of Hallet's grievance. Dearfield sent a letter to relator explaining that although he believed that his firm had earned the $299 that would have been paid in costs, he would refund that amount to Hallet "as a full and complete satisfaction of any claim."

**{¶ 7}** Several weeks later, Dearfield refunded $299 to Hallet and in return Hallet signed a document that stated:

**{¶ 8}** "You acknowledge that you have received $299.00 in cash from this office on this 26th day of February 2010 in full and complete satisfaction of any claims you may have against same and or any of its attorney[s], paralegals etc. Said claims include any and all claims such as legal malpractice, ethical violations, or other complaints to overseeing bodies including the Ohio Supreme Court, the Ohio State Bar Association, the Cincinnati Bar Association or any other applicable entities."

**{¶ 9}** The board concluded that relator proved by clear and convincing evidence that Dearfield had violated (1) Prof.Cond.R. 1.15(c) (a lawyer must deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred), (2) Prof.Cond.R. 1.5(d)(3) (a lawyer shall not charge "a fee denominated as 'earned upon receipt,' 'nonrefundable,' or in any similar terms, unless the client is simultaneously advised in writing that if the lawyer does not complete the representation for any reason, the client may be entitled to a refund of all or part of the fee based upon the value of the representation pursuant to division (a) of this rule"), and (3) Prof.Cond.R. 8.4(d) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice). We agree that Dearfield violated these rules.

## II. Sanction

**{¶ 10}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21; *Akron Bar Assn. v. Freedman*, 128 Ohio St.3d 497, 2011-Ohio-1959, 946 N.E.2d 753, ¶ 7.

**{¶ 11}** The board found that Dearfield's lack of a disciplinary record was a mitigating factor. However, the board found four aggravating factors: (1) Dearfield acted with a dishonest or selfish motive, (2) Dearfield did not cooperate with the disciplinary process, (3) Dearfield engaged in deceptive practices during the disciplinary process, and (4) Dearfield refused to acknowledge the wrongful nature of his conduct.

**{¶ 12}** The board also cited *Cuyahoga Cty. Bar Assn. v. Berger* (1992), 64 Ohio St.3d 454, 597 N.E.2d 81, in support of suspending Dearfield's law license for one year.

**{¶ 13}** Dearfield admits the alleged violations but argues that his conduct does not merit an actual suspension. For the following reasons, we agree.

A. Mitigating and Aggravating Factors

1. Failure to Cooperate/Deceptive Practices

**{¶ 14}** We find that Dearfield's action in securing a release of the disciplinary action is an aggravating factor in this case.

**{¶ 15}** Relator charged Dearfield with violating Gov.Bar R. V(4)(G) "for failing to cooperate with the disciplinary process by requiring Mr. Hallet to sign a release before refunding the court costs," citing *Akron Bar Assn. v. Holder*, 102 Ohio St.3d 307, 2004-Ohio-2835, 810 N.E.2d 426, ¶ 31. However, the board found that there was no clear and convincing evidence that Dearfield had failed to cooperate in this regard. Nevertheless, the board still appears to have found Dearfield's conduct to be an aggravating factor.

**{¶ 16}** In *Holder*, at ¶ 31, the court stated:

**{¶ 17}** "And because respondent had attempted to derail the investigation of his misconduct by negotiating the withdrawal of Wright's grievance through settlement discussions, threatening legal action, and actually filing a grievance against the investigator, among other examples, the board found respondent in

violation of Gov.Bar R. V(4)(G) (requiring an attorney to cooperate in the disciplinary proceedings)."

{¶ 18} Apparently, the board found that Dearfield's conduct in the instant case was distinguishable from the attorney's conduct in *Holder* in determining that there was insufficient evidence to find that Dearfield violated Gov.Bar R. V(4)(G). We agree. However, we also agree that Dearfield's act of having Hallet sign a document that purported to release any disciplinary action pending against Dearfield is an aggravating factor under BCGD Proc.Reg. 10(B)(1)(e) (lack of cooperation in the disciplinary process). While Dearfield's use of this release was not comparable to the pervasive actions taken by the attorney in *Holder* to thwart the disciplinary process, *Holder* put Dearfield on notice that his use of such a release could at least be an aggravating factor under BCGD Proc.Reg. 10(B)(1)(e).

{¶ 19} The board also found that Dearfield had engaged in deceptive practices in dealing with the disciplinary process. However, the board did not specify what actions taken by Dearfield were deceptive, and we cannot locate any such evidence in the record.

{¶ 20} Accordingly, we find that the aggravating factor of failing to cooperate with the disciplinary process is present.

### 2. Dishonest or Selfish Motive

{¶ 21} Contrary to the board's findings, we find that Dearfield did not act with a dishonest or selfish motive with regard to the violation of Prof.Cond.R. 1.15(c) and 8.4(d).

{¶ 22} Dearfield's failure to deposit the $399 into a trust account was based on his mistaken belief that costs paid by a client to a lawyer do not need to be deposited into a trust account pursuant to *Columbus Bar Assn. v. Flanagan* (1997), 77 Ohio St.3d 381, 674 N.E.2d 681. While *Flanagan* did hold that former DR 9-102(A) did not require that costs paid by a client to a lawyer had to be

deposited into a trust account, the rules have recently been amended to require such costs to be deposited into a trust account. Prof.Cond.R. 1.15(c).

{¶ 23} Similarly, we find that Dearfield did not act in a dishonest or selfish manner by initially failing to refund Hallet's fees. Hallet believed that the $399 he paid to Dearfield was for a filing fee and, because no court fees had been incurred, that Dearfield should have refunded the money. Dearfield, on the other hand, believed that his firm had earned at least $1,099 in preparing Hallet's bankruptcy case before Hallet decided that he would not file bankruptcy. Consequently, Dearfield initially believed that he was entitled to use the $399 to offset the fees that Hallet had incurred. Dearfield was wrong, and ultimately he agreed to refund $299 to Hallet, but under these circumstances, we do not find that he acted with a dishonest motive by initially refusing to issue a refund.

{¶ 24} Accordingly, we find that Dearfield did not commit the aggravating factor of acting with a selfish or dishonest motive.

### 3. Wrongful Nature of Conduct

{¶ 25} Contrary to the board's findings, we find that Dearfield acknowledged the wrongful nature of his conduct and has taken steps to prevent further misconduct.

{¶ 26} Dearfield admitted that under the current rule, clients' fees must be deposited into an attorney's trust account. Dearfield also testified at the disciplinary hearing that he has changed his fee agreements by removing the statement that the fee is nonrefundable. Finally, Dearfield stated that he has learned not to condition the settlement of a fee dispute upon the dismissal of any ethics complaint.

### B. *Berger* is Distinguishable

{¶ 27} We also find that *Berger* is distinguishable from the instant case. In *Berger*, the court found that two attorneys charged an excessive fee, denied a client access to settlement proceeds, failed to accept any ethical responsibility for

their conduct, and attempted to suppress the bar association's investigation. *Berger*, 64 Ohio St.3d 454, 597 N.E.2d 81. The court suspended the attorneys' licenses for one year.

{¶ 28} Dearfield's conduct to some degree could be compared to the conduct in *Berger* in that he attempted to secure the release of disciplinary charges filed against him. However, unlike the attorneys in *Berger*, Dearfield did not charge an excessive fee or refuse to return any fees, and perhaps most important, he has acknowledged the wrongful nature of his conduct and has taken steps to prevent future misconduct. Accordingly, we find that *Berger* is not persuasive in determining the appropriate sanction to impose on Dearfield.

### III. Conclusion

{¶ 29} We hold that Dearfield violated three rules of professional conduct and that the aggravating factor of failing to cooperate with the disciplinary process by having his client sign a settlement that purported to release him from any disciplinary action is present. However, he has no prior disciplinary record, ultimately returned his client's fees, admitted his misconduct, and has altered his practice to avoid future misconduct.

{¶ 30} While we cannot locate any cases on point that suggest an appropriate sanction, the primary goal of the attorney disciplinary system is to protect the public. *In re Disbarment of Lieberman* (1955), 163 Ohio St. 35, 41, 56 O.O. 23, 125 N.E.2d 328; *Warren Cty. Bar Assn. v. Marshall*, 121 Ohio St.3d 197, 2009-Ohio-501, 903 N.E.2d 280, ¶ 19. Dearfield has admitted his wrongdoing and has taken the appropriate steps to avoid violating the same disciplinary rules again. Therefore, we do not believe that an actual suspension is in order. Instead, we suspend Dearfield's license to practice law for one year with the entire suspension stayed on the condition that Dearfield not commit any further misconduct.

{¶ 31} Costs taxed to Dearfield.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

G. Mitchell Lippert and Arthur E. Phelps Jr., for relator.

Maguire & Schneider, L.L.P., Karl H. Schneider, and Blake C. Jones, for respondent.

_____