**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Toledo Bar Assn. v. Harvey*, **Slip Opinion No. 2014-Ohio-3675.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-3675

TOLEDO BAR ASSOCIATION *v.* HARVEY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Toledo Bar Assn. v. Harvey*, **Slip Opinion No. 2014-Ohio-3675.]**

*Attorney misconduct, including failing to provide competent representation, failing to consult with client, and engaging in conduct prejudicial to the administration of justice—Two-year suspension, with six months stayed on conditions.*

(No. 2013-1995—Submitted May 13, 2014—Decided September 4, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 12-098.

_____

LANZINGER, J.

{¶ 1} Respondent, Beauregard Maximillion Harvey, Attorney Registration No. 0078717, was admitted to the practice of law in Ohio in May 2005. This is Harvey's second disciplinary matter. Harvey was disciplined in 2012 for failing to act with reasonable diligence in representing clients, failing to

keep his clients informed, and engaging in conduct prejudicial to the administration of justice. We ordered a one-year suspension, all stayed on the conditions that he commit no further misconduct and submit to one year of monitored probation. *Toledo Bar Assn. v. Harvey,* 133 Ohio St.3d 228, 2012-Ohio-4545, 977 N.E.2d 628.

{¶ 2} On April 25, 2013, relator, the Toledo Bar Association, filed a five-count second amended complaint charging Harvey with violating various rules of professional conduct arising from his representation of four clients in various legal matters. Some of the conduct occurred during his stayed suspension and some occurred before his earlier disciplinary case. After conducting a hearing, a three-member panel of the Board of Commissioners on Grievances and Discipline found that he had violated numerous rules of professional conduct. The panel recommended that he be suspended for two years, with six months stayed on conditions.

{¶ 3} The board adopted the panel's findings of fact and conclusions of law but recommends that we suspend Harvey from the practice of law for two years with no portion of the suspension stayed. Harvey filed objections to the board's recommended sanction, and relator filed a response to those objections. After reviewing the record, we adopt the board's findings of fact and misconduct, but we agree with the panel that a two-year suspension with six months stayed on conditions is the appropriate sanction.

**Misconduct**

*Count One–Jennifer Hassall*

{¶ 4} In April 2010, Jennifer Hassall retained Harvey to file a Chapter 7 bankruptcy petition on her behalf. She was ineligible for this type of discharge because it had been granted previously in a case she had filed on December 12, 2002, and a debtor may not be granted a Chapter 7 bankruptcy discharge if the petition is filed within eight years of the filing date of a previous successful

petition. Thus, Hassall could not file another petition for Chapter 7 bankruptcy until after December 12, 2010. Harvey told Hassall that instead he would file a petition for Chapter 13 bankruptcy, which he did on April 3, 2010, and that after December 12, 2010, he would convert it to a Chapter 7 bankruptcy. Hassall directed Harvey to convert the Chapter 13 petition to a Chapter 7 petition on March 22, 2011, and gave him additional money to do so, but he did not file the motion to convert the petition until July 14, 2011.

{¶ 5} Although the court granted the motion to convert, the conversion was ineffective because for purposes of determining whether the eight-year bar applies, the date of the filing rather than the date of the conversion applies. April 3, 2010, the filing date of the Chapter 13 petition, was still within the eight-year period.

{¶ 6} On August 16, 2011, the United States bankruptcy trustee filed a motion to deny a discharge or in the alternative, to dismiss the pending Chapter 7 case. Harvey did not respond to the trustee's motion, he failed to advise Hassall of the hearing on the motion, and he did not attend the hearing on the motion.

{¶ 7} During the disciplinary hearing before the panel, relator offered the testimony of former Chapter 7 bankruptcy trustee Elizabeth Vaughan who testified that the length of time that must pass between successful bankruptcy petitions is set by the U.S. Code: "For Chapter 7, it's eight years; and that's date of filing to date of filing." Vaughan indicated that this knowledge of bankruptcy law would be "bankruptcy 101."

{¶ 8} Hassall paid Harvey $800 in legal fees plus $281 for the filing fee for the Chapter 13 petition in April 2010. On March 22, 2011, she paid Harvey an additional $400 for legal fees to file the conversion to Chapter 7, and on July 14, 2011, she paid an additional $25 to Harvey for the court costs for the conversion. The bankruptcy trustee filed a motion to disgorge fees, and Harvey responded to the motion. He attended the motion hearing, but later admitted to

relator that he had not reviewed any office materials beforehand. The bankruptcy court, however, ultimately allowed Harvey to retain $800 in fees.

{¶ 9} Harvey was charged with the following rule violations: Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(1) (requiring a lawyer to promptly inform a client of any decision or circumstance with respect to which the client's informed consent is required), 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact to a tribunal), 8.4(a) (prohibiting a lawyer from violating the Ohio Rules of Professional Conduct), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 10} Based on the evidence presented at the hearing and the stipulations filed, the panel found with respect to Count One that relator had proved, by clear and convincing evidence, that Harvey lacked the knowledge necessary to represent a debtor in a Chapter 13 bankruptcy and failed to provide Hassall with competent representation in violation of Prof.Cond.R. 1.1. The panel also found that he had violated Prof.Cond.R. 1.3, 1.4(a)(1), 1.4(a)(2), 1.4(a)(3), and 1.4(b) by failing to inform his client and obtain consent and by not consulting with his client or keeping her reasonably informed so that she could make informed decisions about her bankruptcy case. The panel also found a violation of

Prof.Cond.R. 8.4(a).[1]  The board adopted the findings of fact and conclusions of law of the panel.

*Count Two—Michael Degens*

**{¶ 11}** On January 24, 2012, a panel of the Toledo Bar Association's fee-arbitration committee held a hearing on a fee dispute between Michael Degens and two attorneys, Harvey and his co-counsel.  The fee-arbitration panel found in favor of Degens, and in its January 26, 2012 decision and award, ordered the attorneys to pay Degens $5,000 within 30 days of the date of the decision.  Harvey's co-counsel paid one-half of the award to Degens, but Harvey paid nothing.  At the hearing in this case in May 2013, Harvey admitted that he had not paid Degens and also said that he did not have the funds to pay him.  On March 15, 2012, Degens filed a lawsuit for the unpaid amount in the Toledo Municipal Court, and although the docket in that case indicates that service was perfected on Harvey, he failed to appear.  The Toledo Municipal Court granted judgment in favor of Degens in the sum of $2,512 plus interest and court costs.

**{¶ 12}** Harvey testified that he had never received the pleadings and claimed that the municipal court had lacked personal jurisdiction over him because "Harvey Law Office is the party by which Mr. Degens contracted to, not Beau Harvey."  The municipal court's entry was based on the fee-arbitration award against Harvey personally.  Nevertheless, the evidence does not make clear

---

[1] In its report, the panel stated its intention to dismiss the other alleged violations in Count One of relator's complaint.  Gov.Bar R. V(6)(G), which permits a unanimous panel of the board to order the dismissal of a count without referring it to the board or this court for review, requires the panel to provide notice to counsel of record and other interested parties.  The record in this case does not establish that the panel complied with the notice requirements of that rule.  Instead, the panel certified its findings of fact and recommendations to the board in accordance with Gov.Bar R. V(6)(H) and (I).  Because the board did not order dismissal and provide the notices required by Gov.Bar R. V(6)(G), we treat the purported dismissal as a recommendation that the remaining allegations be dismissed.  *See, e.g., In re Complaint Against Harper*, 77 Ohio St.3d 211, 216, 673 N.E.2d 1253 (1996); *Disciplinary Counsel v. Doellman*, 127 Ohio St.3d 411, 2010-Ohio-5990, 940 N.E.2d 928, ¶ 31-33.  We accept the panel's recommendation and dismiss the other violations in Count One.

when Harvey received actual notice of the initial complaint and the subsequent judgment.

{¶ 13} Harvey was charged with the following rule violations: Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation) and Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation), 8.4(d), and 8.4(h).[2]

{¶ 14} The panel found that relator had proved misconduct by clear and convincing evidence. Based on Gov.Bar R. III(3)(A) ("Participation in a legal professional association, corporation, legal clinic, limited liability company, or limited liability partnership shall not relieve an attorney of or diminish any obligation under the Ohio Rules of Professional Conduct or under these rules"), it found Harvey's argument that the judgment was faulty in that it was against him individually and not his company to be unpersuasive. Because he had not paid any money to Degens, the panel found clear and convincing evidence that he had violated Prof.Cond.R. 8.4(d). The board adopted the findings of fact and conclusions of law of the panel for Count Two.

*Count Three—Andrea DeBagio*

{¶ 15} Andrea DeBagio retained Harvey on October 8, 2010, to file a Chapter 7 bankruptcy petition and gave him a check for $999. The terms of the agreement for legal services between them provided that $299 was for filing fees and $700 was for Harvey's legal fees. Harvey negotiated the check on October 8, 2010, and deposited $299 into his IOLTA account and the remaining $700 into another account.

---

[2] The complaint actually cites Prof.Cond.R. 8.4(e), but provides the description of the violation as Prof.Cond.R. 8.4(h). The board found the error immaterial in that Harvey received proper notice of the charges. We agree.

{¶ 16} DeBagio testified that she understood that the bankruptcy petition would be filed on November 2, 2010. She attempted to call Harvey after that date on multiple occasions because creditors were calling her. She finally reached him on December 29, and Harvey told her that he had not filed the petition and advised her that he thought that he should wait until after she received her tax refund check in February to file. She agreed that he could wait to file. After she received her tax refund, she attempted to reach Harvey at least five times between February 17 and March 4, 2011. She then retained new counsel to file the bankruptcy petition and requested that Harvey refund the money previously paid. Her new attorney also requested the refund for his client. Harvey responded that he had "performed all but a de minimis amount of the work" and that DeBagio would "only receive the filing fee back." DeBagio wrote to Harvey again on September 1, 2011, and noted that while she disputed the amount of work he had done, she was willing to accept only her filing fee back but indicated that she wanted it "as soon as possible."

{¶ 17} The panel found that despite DeBagio's and her new counsel's requests to return funds, Harvey did not return the $299 filing fee until October 2012, more than a year after the initial request. The panel also found that Harvey's fee contract with DeBagio did not contain the required written clause that she may be entitled to a refund based on the value of the representation.

{¶ 18} Harvey was charged with the following rule violations: Prof.Cond.R. 1.1, 1.3, 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 1.5(d)(3) (prohibiting a lawyer from charging a flat fee without simultaneously advising the client in writing that she may be entitled to a refund of all or part of the fee if the lawyer does not complete the representation), 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees that are paid in advance), 1.16(d) (requiring a lawyer to promptly return property to the client upon termination of

the representation), 1.16(e) (requiring a lawyer to promptly refund any unearned fee to the client upon termination of the representation), 8.4(c), and 8.4(d).

{¶ 19} Based on the testimony and exhibits, the panel found by clear and convincing evidence that Harvey had violated all the rules charged in Count Three except Prof.Cond.R. 1.16(e), which it dismissed. The board adopted the findings of fact and conclusions of law of the panel.

*Count Four—Andrea DeBagio Documents*

{¶ 20} During the investigation conducted regarding Count Three, relator's investigator requested documentation from Harvey, including IOLTA bank statements, general ledgers, spreadsheets, his receipt book, and documentation concerning the receipt and disbursement of the retainer and court costs paid by DeBagio. Harvey refused, and relator's amended complaint included allegations related to this refusal. In his answer to the amended complaint, Harvey stated, "[T]here has not been a request for [DeBagio's] accounting specifically."

{¶ 21} The panel noted that a letter from relator's investigator made both a broad and a specific request for documents relating to Harvey's representation of DeBagio. Harvey agreed in his deposition that relator was entitled to the client-information sheet that he kept to document DeBagio's money in his IOLTA and agreed to turn it over to relator after the deposition. But he did not, and at the hearing before the panel, he stated, "You don't need the ledger sheet for her case."

{¶ 22} The panel found that relator had proved, by clear and convincing evidence, that Harvey had committed all the rule violations alleged in Count Four by breaching his duty to cooperate in relator's investigation in violation of Gov.Bar R. V, Section 4(G); failing to maintain the requisite records of client funds and escrow accounts in violation of Prof.Cond.R. 1.15(a)(1) and (2); failing to maintain all bank statements, deposit slips, and canceled checks for each bank

account in violation of Prof.Cond.R. 1.15(a)(4); and refusing to provide material facts in response to relator's demand for information in violation of Prof.Cond.R. 8.1(b). The board adopted the panel's findings of fact and conclusions of law.

*Count Five—Improper Communication with Matt Spaulding*

**{¶ 23}** Harvey represented Andre Zepeda, who sued his former employer, Cumulus Broadcasting, L.L.C. ("Cumulus"). Ashley Herd, corporate counsel for Cumulus, sent a letter to Harvey in February 2013 regarding Zepeda's contractual obligations with Cumulus. She requested that Harvey contact her before March 1, 2013, to discuss Zepeda's breach of the employment agreement. Matt Spaulding, Cumulus's vice president and market manager, was copied on the letter. Harvey stipulated in this case that he was aware that Spaulding worked for Cumulus and was represented by counsel.

**{¶ 24}** Harvey responded to Herd's letter by e-mail, refuting her claim and offering to "allow Cumulus to settle [its] potential liabilities by paying [his] client $25,000." On February 28, 2013, Harvey sent the following text messages to Matt Spaulding:

[2:01 p.m.] You should seriously convince them to pay 25k or else face my wrath….it will be fun for sure.

[2:02 p.m.] And, your company is on the losing end on this one.

Spaulding texted the following response to Harvey:

[2:06 p.m.] As I have told you multiple times, this is not a discussion I will get into. Your threats would be better served elsewhere.

Harvey then sent the following replies to Spaulding:

[2:07 p.m.] Come on Matt, this surely isn't a threat….don't be silly.

[2:09 p.m.]  I don't think you understand….this is fun stuff. Its intellectually challenging and it matters to someone.  I only throw you shit on the side bc I like you.

(Ellipsis points sic.)

{¶ 25} Harvey implied in his testimony before the panel that he and Spaulding were friends.  He stated that in texting Spaulding, he was merely "bantering" with him.  But Spaulding testified that he and Harvey were not friends and that he interpreted the text messages as extortion.

{¶ 26} Regarding Count Five, the panel found, by clear and convincing evidence, that Harvey had violated Prof.Cond.R. 4.2 (prohibiting a lawyer from communicating about the subject of his representation of a client with a person known to be represented by another lawyer in the matter, unless he has the consent of the other lawyer or is authorized by law or court order) and 8.4(d). The panel dismissed the allegation that Harvey violated Prof.Cond.R. 8.4(h).[3] The board adopted the findings of fact and conclusions of law of the panel.

### Sanction

{¶ 27} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties the lawyer violated and the sanctions imposed in similar cases.  *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16.  We also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B).  *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 28} The panel found a number of aggravating factors: (1) Harvey has a prior disciplinary case, (2) he acted with a dishonest or selfish motive in not promptly returning money to a client and in attempting to use an alleged

---

[3] The complaint actually cites Prof.Cond.R. 8.4(e), but provides the description of the violation as Prof.Cond.R. 8.4(h).

friendship to secure a settlement for another client, (3) he committed multiple offenses, (4) he failed to cooperate in the disciplinary process in failing to provide requested documents, (5) he did not acknowledge the wrongful nature of his conduct regarding Counts One, Two, and Four, (6) he failed to offer restitution to DeBagio for the additional attorney fees she incurred in retaining another attorney to file her bankruptcy petition. The panel found no mitigating factors.

{¶ 29} In considering the sanction to recommend, the panel looked to cases in which attorneys committed similar misconduct. The panel noted that sanctions for the conduct committed by Harvey in Counts One, Three, and Four ranged from a one-year suspension, all stayed, to a two-year suspension with six months stayed. *See Cincinnati Bar Assn., v. Dearfield,* 130 Ohio St.3d 363, 2011-Ohio-5295, 958 N.E.2d 910 (one-year suspension, all stayed); *Stark Cty. Bar Assn. v. Marosan,* 106 Ohio St.3d 430, 2005-Ohio-5412, 835 N.E.2d 718 (two-year suspension with 18 months stayed); *Cleveland Metro Bar Assn. v. Gresley,* 127 Ohio St.3d 430, 2010-Ohio-6208, 940 N.E.2d 945 (two-year suspension with six months stayed).

{¶ 30} Regarding Count Two, the panel noted that sanctions imposed for similar misconduct have included all-stayed suspensions. *See Disciplinary Counsel v. McCord,* 96 Ohio St.3d 21, 2002-Ohio-2587, 770 N.E.2d 571 (six-month suspension, all stayed); and *Disciplinary Counsel v. McShane,* 121 Ohio St.3d 169, 2009-Ohio-746, 902 N.E.2d 980 (two-year suspension, all stayed).

{¶ 31} For conduct similar to that found in Count Five, sanctions have ranged from a public reprimand to a one-year suspension, all stayed. *See Medina Cty. Bar Assn. v. Cameron,* 130 Ohio St.3d 299, 2011-Ohio-5200, 958 N.E.2d 138 (one-year suspension, all stayed); *Toledo Bar Assn. v, Savage,* 74 Ohio St.3d. 183, 657 N.E.2d 507 (1995) (public reprimand); and *Richland Cty. Bar Assn. v. Bourdeau,* 109 Ohio St.3d 158, 2006-Ohio-2039, 846 N.E.2d 525 (public reprimand).

{¶ 32} The panel recommended that Harvey be suspended from the practice of law for two years, with six months stayed on conditions. The board recommends that Harvey be suspended from the practice of law for two years with no time stayed and that we condition his reinstatement on his making restitution.

{¶ 33} Harvey filed objections to the recommended sanction. He argues that there are factors that the panel should have considered in mitigation and requests that this court impose a less severe sanction than recommended by either the panel or the board. Specifically, he objects to the panel's failure to acknowledge that he has not engaged in the practice of bankruptcy law since he was disciplined in 2012. He also argues that the panel should have considered that Hassall's father paid off one of her creditors without consulting him first as a mitigating factor. Finally, he objects to the panel's failure to consider that before the panel issued its recommendation, he paid Degens in full. At oral argument he said that he thinks a one-year suspension is appropriate.

{¶ 34} Relator responds that the conduct of Hassall's father does not constitute any of the mitigating factors listed in BCGD Proc.Reg. 10(B)(2) and points out that Harvey does not explain how the conduct of Hassall's father mitigates his own lack of competence and his failure to communicate with his client. Relator also argues that Harvey has not offered any evidence to prove that he paid Degens and that even if he had paid, the payment was long overdue and was therefore not a "timely good faith effort to make restitution," as required to satisfy BCGD Proc.Reg. 10(B)(2)(c). Relator did not respond to Harvey's argument that his refraining from practicing bankruptcy law during his stayed suspension was mitigating.

{¶ 35} Upon our independent review of the evidence, we hold that the panel's recommended sanction is the appropriate sanction for Harvey's misconduct, and we therefore adopt that sanction. Beauregard Harvey is

suspended from the practice of law for two years with six months stayed on the conditions that (1) he prove that he has made full restitution of $2,512, plus interest and costs, to Michael Degens, as ordered by the Toledo Municipal Court, and $1,050 to Andrea DeBagio for the additional attorney fees she incurred and (2) he commit no further misconduct.

{¶ 36} The costs of these proceedings are taxed to Harvey.

Judgment accordingly.

KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, J., concurs in judgment only.

O'CONNOR, C.J., and PFEIFER, J., dissent and would decline to stay any portion of the two-year suspension.

_____

Barry & Feit and Gordon R. Barry; Law Office of Brad F. Hubbell and Bradley F. Hubbell; and Michael A. Bonfiglio, Bar Counsel, for relator.

Beauregard M. Harvey, pro se.

_____