**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Brueggeman*, **Slip Opinion No. 2020-Ohio-1578.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-1578

DISCIPLINARY COUNSEL *v.* BRUEGGEMAN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Brueggeman*, Slip Opinion No. 2020-Ohio-1578.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to act with reasonable diligence in representing a client—Two-year suspension with final 18 months conditionally stayed.*

(No. 2019-1734—Submitted January 29, 2020—Decided April 23, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-022.

_____

**Per Curiam.**

{¶ 1} Respondent, Edward Paul Brueggeman, of Mason, Ohio, Attorney Registration No. 0029159, was admitted to the practice of law in Ohio in 1972.  In December 2010, we imposed a conditionally stayed one-year suspension on him for his neglect of four client matters, failure to reasonably communicate with the affected clients, and failure to cooperate in the ensuing disciplinary investigations.

*Disciplinary Counsel v. Brueggeman*, 128 Ohio St.3d 206, 2010-Ohio-6149, 943 N.E.2d 509. We also suspended him from the practice of law for six days in November 2013 for his failure to timely register for the 2013-2015 biennium. *See In re Attorney Registration Suspension of Brueggeman*, 136 Ohio St.3d 1544, 2013-Ohio-4827, 996 N.E.2d 973, *reinstatement granted*, 137 Ohio St.3d 1446, 2013-Ohio-5720, 999 N.E.2d 699.

{¶ 2} In an April 2019 complaint, relator, disciplinary counsel, alleged that Brueggeman had provided incompetent representation to two clients, neglected their legal matters, engaged in dishonest conduct, and failed to comply with reasonable requests for information.

{¶ 3} The parties submitted stipulations of fact, some misconduct, and aggravating and mitigating factors. They also submitted 25 stipulated exhibits. After a hearing before a three-member panel of the Board of Professional Conduct, the board found that Brueggeman committed all but one of the alleged rule violations and recommends that we suspend him from the practice of law for two years, with the final 18 months conditionally stayed. No objections have been filed.

{¶ 4} We adopt the board's findings of misconduct and recommended sanction.

**Misconduct**

*Count I: The Lowry Matter*

{¶ 5} In January 2017, Rebecca Lowry hired Brueggeman and paid him $750 to handle the estate of her deceased brother, Christopher Yates.

{¶ 6} During Lowry's first meeting with Brueggeman, she informed him that she had a buyer for Christopher's truck and asked him how to complete the transaction. At Brueggeman's disciplinary hearing, Lowry testified that Brueggeman told her to sign Christopher's name to the title and backdate the signature so that the truck would not have to pass through the probate estate.

Brueggeman denied that he told Lowry to sign Christopher's name, but he admitted that he notarized the signature—falsely certifying that it had been sworn to and subscribed in his presence by Christopher. The document was never used to transfer ownership of the vehicle.

{¶ 7} The board credited Lowry's account and found that Brueggeman's conduct violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

{¶ 8} When Lowry first met with Brueggeman, her primary concern was finding a way for her mother to disclaim her interest in Christopher's estate. Christopher's will specified that their mother was to receive his house but that if she did not survive him, it would pass to their brother, David Yates. Lowry told Brueggeman that her mother was in a nursing home and could not own any property because she was on Medicaid; for those reasons, Lowry wanted Christopher's house to pass directly to David. Lowry had a power of attorney to handle her mother's affairs, but Brueggeman did not review it before directing Lowry to execute a document purporting to disclaim her mother's interest in Christopher's estate.

{¶ 9} In early February, Brueggeman took the initial estate paperwork to the probate court to meet with a magistrate. He showed the magistrate the disclaimer that Lowry had executed on her mother's behalf and sought advice on how to transfer the house directly to David. The magistrate stated that Brueggeman should begin by determining whether the power of attorney gave Lowry the authority to disclaim the inheritance on her mother's behalf. But he also suggested that it might be inappropriate to transfer the property to David because Lowry's mother was receiving Medicaid benefits.

{¶ 10} Brueggeman later determined that the power of attorney did not authorize Lowry to disclaim her mother's inheritance, and he informed Lowry that he could not achieve her desired objective. However, he did not adequately

communicate that he intended to terminate his representation. Nonetheless, Brueggeman stopped working on the case and did not respond to Lowry's subsequent attempts to communicate with him. After Lowry retained new counsel and filed a grievance, Brueggeman refunded her entire $750 retainer.

{¶ 11} The board found that Brueggeman violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client) by failing to open Christopher's estate during the nearly six months that he represented Lowry, failing to take any action to determine how to proceed after discovering that the power of attorney did not authorize Lowry to disclaim her mother's inheritance, and failing to respond to Lowry's attempts to communicate with him. Based on the insufficiency of the evidence, however, the board unanimously dismissed relator's allegation that Brueggeman failed to provide competent representation to Lowry.

*Count II: The Baker Matter*

{¶ 12} In February 2017, Angela and Irene Baker retained Brueggeman to probate the estate of their deceased mother, Lucille Baker. On April 13, 2017, Brueggeman filed an application to probate Lucille's will, which Brueggeman had drafted, in the Medina County Probate Court, and Irene was appointed executor of the estate.

{¶ 13} During their initial meeting, Brueggeman had told Angela and Irene that he would mail waivers of notice of the hearing on the inventory of the estate to each of Lucille's 14 children. But he did not mail the required documents to Lucille's children until June 12—just one day before the statutory deadline for filing them in the probate court. *See* R.C. 2107.19(A)(4). The court issued a delinquency notice on July 20, directing Irene and Brueggeman to file the documents within 30 days. On August 11, Brueggeman filed the required certificate of service, representing that all persons entitled to notice of the admission of the will to probate had received it, but he did not provide any proof

that such service had occurred and submitted waivers from just four of the 14 children. Brueggeman's response to a second deficiency notice was approximately six weeks late and did not include Angela's waiver. When Irene and Angela appeared without Brueggeman at the hearing on the inventory on December 1, 2017, the magistrate verified that Angela had no objections and then approved the estate inventory.

{¶ 14} In January 2018, Brueggeman wrote a letter seeking the magistrate's guidance on how to proceed because the estate's liabilities exceeded its assets and several unsecured creditors would not respond to Brueggeman's communications. In that letter, Brueggeman enclosed an application and a certificate of transfer for Lucille's home and asked the magistrate to file them, though Brueggeman had not yet resolved all of the creditors' claims.

{¶ 15} The magistrate did not respond to Brueggeman's letter but scheduled a status conference. At that conference, the magistrate informed Brueggeman that due to the way he had drafted Lucille's will, her home could not be sold until her creditors were satisfied. The magistrate suggested to Brueggeman several possible courses of action, but when Brueggeman sought additional guidance, the magistrate informed him that she could not give him legal advice and directed him to read the relevant statutes.

{¶ 16} After the status conference, Brueggeman told Irene that he could not keep commuting from Mason to Medina—approximately 400 miles round trip—for hearings, but he never told her that he was terminating his representation or that she would need to secure other counsel. On the contrary, he told her that he would contact Lucille's creditors and attempt to negotiate the settlement of her debts. But from February 28 to May 1, Brueggeman failed to respond to more than 40 attempted communications from Irene and her family. Consequently, in May 2018, Irene obtained new counsel to complete the representation. At the

request of that counsel, Brueggeman forwarded paperwork regarding the two creditor claims that he had managed to settle on behalf of the estate.[1]

{¶ 17} The parties stipulated and the board found that Brueggeman's conduct violated Prof.Cond.R. 1.3 and 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from a client). Although the parties did not stipulate to a violation of Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), the board found that the evidence clearly and convincingly supported a finding that Brueggeman violated that rule. Specifically, the board found that Brueggeman's failure to conduct his own legal research to determine how to settle an insolvent estate, his attempt to transfer the decedent's real estate without first resolving the secured claims of the decedent's creditors, and his decision to abandon the representation without informing his clients did not constitute competent legal representation.

## Sanction

{¶ 18} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 19} As aggravating factors, the parties stipulated and the board found that Brueggeman has a history of prior discipline and had committed multiple offenses. *See* Gov.Bar R. V(13)(B)(1) and (4).

{¶ 20} As for mitigation, the parties stipulated that Brueggeman had made a timely, good-faith effort to make restitution in the Lowry matter and had demonstrated a cooperative attitude toward the disciplinary proceedings. *See*

---

1. The parties stipulated that due to a lack of records, they could not confirm the exact amount that the Bakers had paid Brueggeman for his representation. In his posthearing brief, however, Brueggeman stated that he had received payments totaling $600 and paid $275 in filing fees to the probate court, leaving him with a fee of $325 for the work that he had performed. There is no evidence that anyone has requested reimbursement of that fee in this case.

Gov.Bar R. V(13)(C)(3) and (4). The board adopted the stipulated factors and also found that Brueggeman had presented evidence of his good character and reputation as demonstrated by nine character letters and his own testimony regarding his public service. *See* Gov.Bar R. V(13)(C)(5).

{¶ 21} The board considered Brueggeman's argument that he should receive a fully stayed suspension for his misconduct in this case, but it noted that just one of the cases he advanced in support of that proposed sanction involved a finding that the attorney had engaged in dishonest conduct. *See Toledo Bar Assn. v. Crosser*, 147 Ohio St.3d 499, 2016-Ohio-8257, 67 N.E.3d 789. The board also acknowledged that in *Disciplinary Counsel v. Guinn*, 150 Ohio St.3d 92, 2016-Ohio-3351, 79 N.E.3d 512, we imposed a conditionally stayed two-year suspension on an attorney who failed to provide competent and diligent representation to two clients, failed to inform one client that her appeal had been dismissed as a result of the attorney's failure to timely file a brief, and engaged in conduct that was prejudicial to the administration of justice by initiating a legal proceeding that was unsupported by law and fact.

{¶ 22} The board also considered several cases cited by relator in support of its recommended sanction—a two-year suspension with 18 months conditionally stayed. Of these cases, the board found *Medina Cty. Bar Assn. v. Malynn*, 131 Ohio St.3d 377, 2012-Ohio-1293, 965 N.E.2d 299, to be most instructive. Malynn neglected three client matters, missing the statute of limitations in one case and causing a $31,000 default judgment to be entered against his client in another. He also engaged in dishonest conduct and failed to reasonably communicate with one client, failed to preserve the identity of another client's funds, and failed to cooperate in the initial stages of the disciplinary proceeding. Just two mitigating factors were present—the absence of a prior disciplinary record and Malynn's good character, as demonstrated by his 23-year career in the United States Marine Corps. Aggravating factors, however,

consisted of a pattern of misconduct, multiple offenses, Malynn's failure to cooperate in the disciplinary process, his effort to deceive the panel at his disciplinary hearing with several half-truths, and the harm he had caused to vulnerable clients. On those facts, we suspended Malynn from the practice of law for two years, with the final six months stayed on the condition that he commit no further misconduct. *Id.* at ¶ 19.

{¶ 23} In addition to the cases cited by the parties, the board considered *Toledo Bar Assn. v. Harvey*, 141 Ohio St.3d 346, 2014-Ohio-3675, 24 N.E.3d 1106. Harvey failed to provide competent and diligent representation to two bankruptcy clients, failed to reasonably communicate with those clients, and engaged in dishonest conduct by attempting to keep one client's entire flat fee even though he never filed her case. Harvey also engaged in improper communications with a person he knew to be represented by counsel, failed to maintain required records for his client trust account, and failed to cooperate in one of the resulting disciplinary investigations. In the presence of six aggravating and no mitigating factors, we suspended Harvey from the practice of law for two years, with six months stayed on conditions, *id.* at ¶ 37.

{¶ 24} The board found that Brueggeman's misconduct was not as egregious as that of Malynn or that of Harvey but that it was more serious than that in *Guinn* because Brueggeman had previously been disciplined for the same type of misconduct at issue in this case. The board therefore adopted relator's recommendation that Brueggeman be suspended from the practice of law for two years, with the final 18 months stayed on the condition that he commit no further misconduct.

{¶ 25} After independently reviewing the record and applicable precedent, we agree that a two-year suspension with 18 months conditionally stayed is the appropriate sanction in this case. Accordingly, we suspend Edward Paul Brueggeman from the practice of law for two years, with the final 18 months

stayed on the condition that he engage in no further misconduct. If Brueggeman fails to comply with the condition of the stay, the stay will be lifted and he will serve the full two-year suspension. Costs are taxed to Brueggeman.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

––––––––––––––––––

Joseph M. Caligiuri, Disciplinary Counsel, and Lia J. Meehan, Assistant Disciplinary Counsel, for relator.

Montgomery Jonson, L.L.P., and George D. Jonson, for respondent.

––––––––––––––––––