MEDINA COUNTY BAR ASSOCIATION *v.* MALYNN.

[Cite as *Medina Cty. Bar Assn. v. Malynn,*

131 Ohio St.3d 377, 2012-Ohio-1293.]

*Attorney misconduct, including neglecting several client matters and engaging in conduct involving dishonesty—Two-year suspension with six months stayed on condition.*

(No. 2011-1428—Submitted October 5, 2011—Decided March 28, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-012.

_____

**Per Curiam.**

{¶ 1} Respondent, Steven Reynolds Malynn of Medina, Ohio, Attorney Registration No. 0067339, was admitted to the practice of law in Ohio in 1996. We imposed an attorney-registration suspension in November 2011 for his failure to register for the 2011 to 2013 biennium. *In re Attorney Registration Suspension of Malynn*, 130 Ohio St.3d 1420, 2011-Ohio-5627, 956 N.E.2d 310. And on December 29, 2011, the Commission on Continuing Legal Education issued an order suspending Malynn for failing to comply with the continuing-legal-education requirements of Gov.Bar R. X. Both suspensions remain in effect. *In re Continuing Legal Edn. Suspension of Malynn*, 130 Ohio St.3d 1505, 2011-Ohio-6770, 959 N.E.2d 2.

{¶ 2} In a February 2009 one-count complaint, relator, Medina County Bar Association, charged Malynn with failing to preserve the identity of client funds, failing to maintain a client trust account, engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, and failing to cooperate in the

disciplinary investigation. On June 30, 2009, relator moved for default, based upon Malynn's failure to answer the complaint.

{¶ 3} Relator filed an amended complaint in December 2009, charging Malynn with two additional counts of misconduct. In March, April, and September 2010, the secretary of the Board of Commissioners on Grievances and Discipline notified relator that Malynn was in default and instructed relator to move for default judgment. But on October 27, 2010, Stephen J. Brown entered an appearance as counsel for Malynn and sought leave to respond. Thereafter, relator filed a second amended complaint, charging Malynn with five counts of misconduct. Malynn answered the complaint, and the matter finally proceeded to a panel hearing on June 6, 2011.

{¶ 4} The board adopted the panel's report and recommends that we suspend Malynn for two years, with six months stayed, based upon findings that he failed to preserve the identity of client funds, failed to reasonably communicate with a client, engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, neglected three client matters, and failed to cooperate in multiple disciplinary investigations.

{¶ 5} With minor exceptions, we adopt the board's findings of fact and misconduct, and we suspend Malynn from the practice of law in Ohio for two years, with six months stayed on the condition that he commit no further misconduct. We condition his reinstatement upon his completing a mental-health evaluation and following all resulting treatment recommendations and his submitting a statement from a qualified health-care professional that he is competent to return to the ethical, professional practice of law.

**Misconduct**

*Count One*

{¶ 6} In 2006, Malynn left his employer to start his own firm, and one of his clients at the firm, Anthony Imburgia, elected to maintain his representation.

2

In the summer of 2006, Imburgia executed a fee agreement and gave Malynn a $5,000 retainer, which Malynn later admitted having deposited in his operating account, not in a client trust account. The board found that Imburgia terminated the representation in March 2007, due to Malynn's failure to communicate with him, and requested a bill for the services provided and a refund of the unearned portion of his retainer. Malynn sent an invoice, dated June 1, 2007, and a check for $345 drawn on his operating account. The client disputed both the amount of work that Malynn claimed to have done on his behalf and the corresponding portion of the retainer that had been kept. When Imburgia first attempted to negotiate the check, it was returned for insufficient funds.

**{¶ 7}** Based upon an erroneous finding that Malynn received the retainer in March 2007, the board found that Malynn's conduct violated Prof.Cond.R. 1.15 (requiring a lawyer to preserve the identity of client funds and property), rather than DR 9-102 (also requiring a lawyer to preserve the identity of client funds and property) as charged in relator's complaint.[1] Because the evidence demonstrates that Imburgia paid the retainer in August 2006 and discharged Malynn after February 1, 2007, the effective date of the Rules of Professional Conduct, we find that Malynn's conduct violated both DR 9-102 and Prof.Cond.R. 1.15, though we treat the conduct as a single ethical violation. *See Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1. We agree with the board that relator failed to prove by clear and convincing evidence that Malynn engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation with respect to this count and therefore dismiss the alleged violation of Prof.Cond.R. 8.4(C).

---

1. Relator charged Malynn with misconduct pursuant to applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which superseded the Code of Professional Responsibility.

*Count Two*

**{¶ 8}** Traci Rabb retained Malynn to represent her in an employment-discrimination matter in 2008. She paid a $3,000 retainer and agreed that Malynn would receive a 30 percent contingent fee. Malynn filed suit on Rabb's behalf, but did little else. Rather than comply with a court order compelling him to provide requested discovery, he dismissed the action without prejudice pursuant to Civ.R. 41(A) on October 22, 2008. He ignored numerous e-mails from Rabb requesting a status update on the matter, including one seeking information about the scheduling of depositions. In an Internet search, Rabb discovered that her case had been dismissed six months earlier, and she sent Malynn an e-mail stating that she had never authorized the dismissal. Based on Rabb's e-mails, the board rejected Malynn's claim that Rabb had consented to the dismissal. Malynn also testified that he had returned Rabb's $3,000 retainer, but on cross-examination, he conceded that he had done so only after Rabb obtained a $3,000 default judgment against him in small-claims court.

**{¶ 9}** The board found that Malynn's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(1) (requiring a lawyer to inform the client of any decision or circumstance with respect to which the client's informed consent is required), 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). But the board recommends that we dismiss for insufficient evidence the charge alleging a violation of Prof.Cond.R. 1.1 (requiring a lawyer to provide competent

representation to a client).[2] We adopt the board's findings of fact and misconduct and dismiss the charge alleging a violation of Prof.Cond.R. 1.1.

*Count Three*

{¶ 10} In May 2009, a client filed a grievance against Malynn. Malynn did not respond to relator's letters of inquiry, but the investigator eventually spoke with him by phone. Relator reached the conclusion that no misconduct had occurred in Malynn's representation of the grievant, but charged him with violating Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation). The board recommends that we dismiss the charge because relator did have a conversation with Malynn and thereafter determined that the underlying grievance had no merit. We adopt the board's findings and hereby dismiss the charge alleging a violation of Gov.Bar R. V(4)(G) with respect to this count.

*Counts Four and Five*

{¶ 11} The allegations in count four relate to Malynn's handling of two legal matters for his clients Robert Estes ("Estes") and Estes Hauling Service, Inc. ("EHS"). In the first matter, Malynn filed a breach-of-contract action on behalf of Estes. After the defendant filed for bankruptcy protection, Malynn told Estes that he would file an objection to the bankruptcy on the ground of fraud, but he failed to do so. In the second matter, Malynn's failure to file an answer in an action filed against EHS resulted in a $31,000 default judgment against the company.

{¶ 12} Count five arises from Malynn's representation of Lisa Constantino, who wanted him to file an action against her financial broker for

---

2. In its written closing argument, relator alleges additional violations in this count, as well as in counts four and five, that it did not charge in its complaint. Citing *Disciplinary Counsel v. Simecek*, 83 Ohio St.3d 320, 699 N.E.2d 933 (1998) (holding that due process prevents us from finding disciplinary violations that have not been charged in the complaint), the board recommends dismissing those alleged violations, even though it finds that some were proven by clear and convincing evidence. We agree with the board's analysis regarding these alleged violations and, therefore, do not address them.

churning her mutual funds to create commissions. Constantino paid a $3,000 retainer and gave Malynn a $1,425 check for the filing fee, but had to replace the check for the filing fee on two separate occasions because Malynn had apparently misplaced it. Malynn failed to handle the matter in a timely manner and missed the statute-of-limitations deadline. Although relator had not charged Malynn with any violations related to the handling of Constantino's retainer, the board found that he initially testified that he refunded the retainer from his client trust account but acknowledged on cross-examination that the refund had been paid from his general operating account.

{¶ 13} The board found that relator had proved by clear and convincing evidence that Malynn had failed to act with reasonable diligence as required by Prof.Cond.R. 1.3 in his representation of Estes and EHS in count four and Constantino in count five, but recommends that we dismiss the charges alleging violations of Prof.Cond.R. 1.1 based upon insufficiency of the evidence. We adopt the board's findings of fact and misconduct with respect to these counts.

### Failure to Cooperate

{¶ 14} Despite Malynn's cooperation in the later stages of this proceeding, the board finds that his failure to answer both the complaint and the first amended complaint clearly and convincingly demonstrates his violation of Gov.Bar R. V(4)(G). We agree.

### Sanction

{¶ 15} In imposing a sanction for attorney misconduct, we consider the aggravating and mitigating factors listed in BCGD Proc.Reg. 10. *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. As aggravating factors, the board found that Malynn had committed multiple offenses; failed to cooperate in the disciplinary process, narrowly avoiding a default judgment; attempted to deceive the panel at his disciplinary hearing with several half-truths; and caused harm to vulnerable clients by depriving them of the

opportunity to have their cases heard. *See* BCGD Proc.Reg. 10(B)(1)(d), (e), (f), and (h). We agree and also find that he engaged in a pattern of misconduct. *See* BCGD Proc.Reg. 10(B)(1)(c).

{¶ 16} The board found only two mitigating factors present—the absence of a prior disciplinary record (though he has since been suspended for a registration violation) and his good character, as demonstrated by his 23-year career in the United States Marine Corps. *See* BCGD Proc.Reg. 10(B)(2)(a) and (e). Although Malynn claims that his diagnosed anxiety disorder contributed to his misconduct and should be considered as a mitigating factor, the board found that he failed to satisfy all the criteria necessary for such consideration because he did not demonstrate that his mental disability contributed to cause his misconduct, that he had had a sustained period of successful treatment, or that a qualified health-care professional had issued a prognosis that he would be able to return to the competent, ethical, and professional practice of law. *See* BCGD Proc.Reg. 10(B)(2)(g). To the contrary, the letter submitted by his doctor stated that there is "no evidence of any thought disorder that would interfere with his professional judgment," and a representative from Ohio Lawyers Assistance Program ("OLAP") testified that he had managed only partial compliance with his OLAP contract. We agree with the board's findings regarding mitigating factors.

{¶ 17} Relator argued in favor of a two-year suspension with the second year stayed on conditions. Malynn, on the other hand, argued that a sanction no greater than a six-month stayed suspension is appropriate. The board, however, recommends a two-year suspension with six months stayed as the appropriate sanction for Malynn's misconduct. Neither party has objected to the board's recommendation.

{¶ 18} In support of its recommended sanction, the board cites *Akron Bar Assn. v. Dismuke*, 128 Ohio St.3d 408, 2011-Ohio-1444, 945 N.E.2d 507, in which we imposed a two-year suspension with the second year stayed on

conditions for an attorney who had neglected two client matters, failed to reasonably communicate with those clients, failed to preserve the identity of one client's funds and promptly deliver funds that the client was entitled to receive, failed to timely register with this court and keep the court apprised of his current address, and failed to cooperate in the resulting disciplinary investigation. *Id*. at ¶ 4-7, 15. Like Malynn, Dismuke claimed that he suffered from a mental condition but failed to demonstrate that his condition qualified as a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv). *Id*. at ¶ 10. The board, however, found that Malynn's conduct was more egregious than that of Dismuke because he neglected several client matters and engaged in conduct that involved dishonesty, fraud, deceit, or misrepresentation. Therefore, it concluded that the greater sanction of a two-year suspension with only six months stayed was the appropriate sanction for Malynn's misconduct. We agree with the board's analysis.

{¶ 19} Accordingly, Steven Reynolds Malynn is suspended from the practice of law in Ohio for two years, with the final six months of the suspension stayed on the condition that he commit no further misconduct. If Malynn fails to comply with the condition of the stay, the stay will be lifted and he will serve the full two-year suspension. In applying for reinstatement, Malynn must submit evidence that he completed a mental-health evaluation and followed all resulting treatment recommendations and must provide proof to a reasonable degree of medical certainty that he is competent to return to the ethical, professional practice of law. Costs are taxed to Malynn.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

The Bailey Law Firm, Steve C. Bailey, Beau A. Schultz, and William E. Steiger, for relator.

Stephen J. Brown, for respondent.

_____