[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Simon,* **Slip Opinion No. 2016-Ohio-535.**]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-535

DISCIPLINARY COUNSEL *v*. SIMON.

[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Simon,* Slip Opinion No. 2016-Ohio-535.**]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to inform a client of any decision or circumstance with respect to which the client's informed consent is required and failing to keep a client reasonably informed about the status of a matter—Conditionally stayed six-month suspension.*

(No. 2014-2155—Submitted June 23, 2015—Decided February 17, 2016.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2014-013.

_____

**Per Curiam.**

{¶ 1} Respondent, Thomas John Simon of Ashtabula, Ohio, Attorney Registration No. 009725, was admitted to the practice of law in Ohio in 1981. On

February 16, 2011, we suspended Simon from the practice of law for one year, fully stayed on conditions, for commingling personal and client funds in his client trust account and failing to cooperate in the ensuing disciplinary investigation. *Disciplinary Counsel v. Simon*, 128 Ohio St.3d 359, 2011-Ohio-627, 944 N.E.2d 660.

{¶ 2} On July 16, 2014, relator, disciplinary counsel, filed an amended complaint with the Board of Commissioners on Grievances and Discipline[1] charging Simon with multiple violations of the Rules of Professional Conduct in two separate legal matters arising primarily from his alleged failure to reasonably communicate with his clients. In his answer, Simon admitted many of the alleged facts and that his conduct violated Prof.Cond.R. 1.4(c) (requiring a lawyer to inform the client if the lawyer does not maintain professional liability insurance), but he denied the remaining allegations of misconduct.

{¶ 3} The parties submitted stipulated facts and exhibits and a panel of the board conducted a hearing. Based on the stipulated facts and the testimony of Simon and the affected clients, the panel found that Simon failed to keep two clients reasonably informed about the status of their legal matters, failed to obtain their informed consent about certain aspects of their legal matters, neglected one client's matter, and failed to advise the other client that he did not carry malpractice insurance. The panel also unanimously dismissed allegations that he knowingly made a false statement of material fact in connection with his disciplinary matter and engaged in conduct that was prejudicial to the administration of justice.

{¶ 4} The board adopted the panel's findings of fact and misconduct as well as its recommendation that Simon be suspended from the practice of law for two years, with 18 months stayed on the condition that he engage in no further misconduct. Simon objects to the board's findings of fact and recommended

---

[1] Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

sanction, arguing that relator failed to establish the alleged misconduct by clear and convincing evidence and that his stipulated misconduct warrants, at most, a fully stayed suspension.

**{¶ 5}** Having thoroughly reviewed the record, we conclude that relator has proven by clear and convincing evidence that Simon engaged in the charged misconduct. Therefore, we overrule Simon's first objection and adopt the board's findings of fact and misconduct. Having considered the applicable aggravating and mitigating factors, however, we conclude that a six-month suspension, fully stayed on the condition that Simon engage in no further misconduct, is the appropriate sanction in this case.

### Misconduct

*Count One—Danny Hubbard*

**{¶ 6}** Following the termination of his employment with the village of Jefferson, Danny Hubbard retained Simon to pursue a wrongful-termination claim shortly before the applicable statute of limitations expired. Simon timely filed a complaint without requiring Hubbard to pay a retainer.

**{¶ 7}** Hubbard went to the courthouse for a scheduled pretrial hearing in July 2011 and waited in the hallway outside of the courtroom, but Simon failed to appear. Consequently, the court ordered Hubbard to pay the defendants reasonable attorney fees of $150 and scheduled a hearing for Hubbard to show cause why his complaint should not be dismissed. After receiving a copy of the entry, Hubbard called Simon, who explained that he had simply forgotten to appear at the hearing. Simon appeared at the show-cause hearing, and the court scheduled the matter for mediation and a jury trial.

**{¶ 8}** Simon did not respond to the defendants' first set of interrogatories and requests for production of documents in early July, their renewed requests in September, their October motion to compel discovery, or the court's order granting their motion to compel. And Hubbard testified that Simon never discussed any of

the discovery requests with him. Rather than oppose the defendants' motion for summary judgment, Simon voluntarily dismissed Hubbard's complaint, but Hubbard testified that Simon never discussed that course of action before taking it. Because Hubbard was unable to find new counsel willing to represent him, he did not refile the case.

**{¶ 9}** Hubbard submitted a grievance to the certified grievance committee of the Ashtabula County Bar Association, but the committee decided not to file a complaint. Hubbard appealed that decision to the secretary of the Board of Commissioners on Grievances and Discipline. After investigating Hubbard's grievance, relator filed a formal complaint alleging that Simon's conduct violated Prof.Cond.R. 1.4(a)(1) (requiring a lawyer to inform the client of any decision or circumstance with respect to which the client's informed consent is required), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), and 1.4(c) (requiring a lawyer to inform the client if the lawyer does not maintain professional liability insurance and obtain a signed acknowledgment of that notice from the client).

**{¶ 10}** Simon stipulated that he failed to advise Hubbard that he did not carry professional liability insurance and that his conduct violated Prof.Cond.R. 1.4(c). But he argued that he kept his client reasonably informed about the status of his matter through telephone conversations and letters. In support of that argument, he submitted five letters that he claimed to have sent to Hubbard regarding his case—at least three of which Hubbard denied having received.

**{¶ 11}** The first disputed letter, dated July 16, 2010, stated that Simon was willing to represent Hubbard but that he would require payment of a $3,750 retainer. In the second disputed letter, dated February 14, 2011, Simon reiterated that he could not continue the representation beyond the filing of the complaint unless he received the requested $3,750 retainer. That letter also suggested that if the retainer was not paid and Hubbard could not find another attorney, Hubbard

could voluntarily dismiss the complaint to extend the statute of limitations for an additional year. The third disputed letter, dated November 23, 2011, stated that Simon filed a notice of dismissal, effectively extending the statute of limitations for Hubbard's claim an additional year; identified the deadline for refiling the case; and advised Hubbard that Simon was willing to continue the representation if he paid a retainer.

**{¶ 12}** But Hubbard testified that he had not received these letters from Simon and that he learned that his complaint had been dismissed when he went to the courthouse and spoke to the judge's secretary about the status of his case. Moreover, he stated that Simon (1) never informed him that he would need to pay a retainer to commence or maintain the representation, (2) never discussed the defendants' discovery requests with him, and (3) never discussed the notice of dismissal with him before filing it.

**{¶ 13}** While Hubbard admitted that he received as many as three or four letters from Simon, he also testified that he is dyslexic and that he had a friend read the letters to him to ensure that he fully comprehended them. The board found that under intense cross-examination, Hubbard maintained that he did not receive Simon's July 16, 2010, February 14, 2011, and November 23, 2011 letters, and that Simon never informed him that he would dismiss the complaint if he did not pay a retainer.

**{¶ 14}** The panel found Hubbard's testimony to be more credible than Simon's. Therefore, in addition to Simon's stipulated violation of Prof.Cond.R. 1.4(c), the panel determined that Simon failed to obtain Hubbard's informed consent before dismissing his complaint and failed to keep Hubbard reasonably informed about the status of his legal matter in violation of Prof.Cond.R. 1.4(a)(1) and (3). The board adopted those findings.

**{¶ 15}** Simon objects to the board's findings, arguing that relator failed to present clear and convincing evidence—sufficient to produce a firm belief or

conviction as to the facts sought to be established—that his conduct in the Hubbard matter violated Prof.Cond.R. 1.4(a)(1) and (3). *See Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus (defining clear and convincing evidence). The essence of Simon's argument is that due to inconsistencies in Hubbard's testimony, the panel should have determined that Simon's testimony, supported by copies of the letters that he claimed to have sent to Hubbard, was more credible. Simon therefore urges us to review the deposition and hearing transcripts and assess the credibility of the witnesses for ourselves.

{¶ 16} We have held that this court renders the final determination of the facts in disciplinary cases and that we are not bound by the findings of the board. *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 708 N.E.2d 193 (1999), paragraph one of the syllabus. We have also acknowledged that the panel members are in a better position to assess the credibility of the witnesses, because they are able to see and hear the witnesses firsthand. *See, e.g.*, *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8. And for that reason, we ordinarily defer to the panel's credibility determinations unless the record weighs heavily against those findings. *Id.*

{¶ 17} While there were some inconsistencies in Hubbard's testimony, particularly with regard to the dates he met with Simon, his testimony regarding the key elements of relator's claim remained consistent. And although the panel did not explain why it found Simon's testimony to be less credible than Hubbard's, we note that Simon's version of events had even more troubling inconsistencies. For example, in responding to the initial inquiry regarding Hubbard's grievance, Simon did not mention, let alone produce, the letters that are now the key to his defense. And when he submitted documents to the certified grievance committee three months later, the one letter that Hubbard indisputably received was conspicuously absent. That letter, forwarding a time-stamped copy of the complaint, instructed Hubbard to refer all inquiries about the case to Simon and outlined Simon's plans

to commence discovery—without mentioning the need for a retainer or Simon's intent to dismiss the complaint. While the panel found that this evidence was insufficient to prove that any of the letters Simon produced had been fabricated,[2] we find that it is nonetheless sufficient to cast doubt on Simon's credibility.

{¶ 18} Therefore, we conclude that the record does not weigh heavily against the board's credibility findings, overrule Simon's first objection with respect to the Hubbard matter, and adopt the board's findings of fact and misconduct with respect to this count.

*Count Two: The Grippi Matter*

{¶ 19} In April 2010, Louis Grippi retained Simon to represent him in connection with a wrongful-termination claim against his former employer, the city of Ashtabula, and a related unfair-labor-practice claim against his union for refusing to pursue arbitration of that claim.[3] He later retained a separate attorney to pursue related federal claims.

{¶ 20} Simon filed a complaint against the Ashtabula city manager and the president of the union in the Ashtabula County Court of Common Pleas in November 2010. The following month, the city manager answered the complaint and filed a motion for judgment on the pleadings, and the union moved to dismiss the complaint. Although Simon sought and obtained leave to respond to the defendants' dispositive motions by April 15, 2011, he never actually filed a response. Consequently, the judge dismissed Grippi's case with prejudice on August 10, 2011.

---

[2] Based on the insufficiency of the evidence regarding the alleged fabrication of the letters, the panel unanimously dismissed alleged violations of Prof.Cond.R. 8.1(a) (prohibiting knowingly making a false statement of material fact in connection with a disciplinary matter) and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

[3] Grippi's claim against the union was dismissed by the State Employment Relations Board on July 22, 2010.

**{¶ 21}** Unaware that his case had been dismissed, Grippi sent Simon a letter by certified mail asking for a status update. But on August 18, 2011, he read in the local newspaper that the case had been dismissed with prejudice. When Grippi inquired about the dismissal, Simon agreed to appeal it. He timely filed a notice of appeal, but when he failed to file an appellate brief after receiving multiple extensions of time, Grippi terminated his representation and hired the attorney who was handling his federal claims to complete the appeal. The court of appeals ultimately affirmed the dismissal of the action with prejudice. *Grippi v. Cantagallo*, 11th Dist. Ashtabula No. 2011-A-0054, 2012-Ohio-5589.

**{¶ 22}** The panel members heard conflicting testimony from Simon and Grippi. Simon testified that Grippi frequently stopped by his office and received updates about his case during those visits. But the panel members believed that Simon failed to keep Grippi informed about the status of the case and that he allowed the case to be dismissed with prejudice without even notifying Grippi that the defendants had filed dispositive motions. Therefore, the panel and board found that Simon violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(1), and 1.4(a)(3).

**{¶ 23}** Simon objects, arguing that there is insufficient evidence to support the board's findings that he committed any misconduct in the Grippi matter. First, he contends that Grippi admitted to having brief conversations about the defendants' dispositive motions, though Grippi claimed to have not known whether Simon intended to respond to those motions. Simon also argues that Grippi knew about the possibility of dismissal because he admitted that Simon had mentioned Civ.R. 41 to him at some point during the representation. But Grippi also testified that while he remembered Simon mentioning the rule number, he had not known what the rule entailed.

**{¶ 24}** We conclude that the testimony identified by Simon does not weigh heavily against the panel's findings that Simon not only failed to keep Grippi

8

reasonably informed about the status of his case but also failed to obtain Grippi's informed consent to allow the defendants' dispositive motions to remain unopposed. Furthermore, Simon's performance of what he describes as "substantial work" on Grippi's case cannot excuse (1) his failure to discuss his litigation strategy with his client, (2) his failure to obtain his client's consent before letting the defendants' dispositive motions go unopposed, or (3) his failure to timely file an appellate brief. Therefore, we overrule Simon's objection with regard to this matter and adopt the board's findings of fact and misconduct with respect to this count.

**Sanction**

**{¶ 25}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B).[4] *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 26}** As aggravating factors, the board found that Simon had a prior disciplinary offense, engaged in multiple offenses by failing to reasonably communicate with two separate clients on multiple occasions, and failed to acknowledge the wrongful nature of his conduct. *See* BCGD Proc.Reg. 10(B)(1)(a), (d), and (g). In mitigation, the board found that Simon did not act with a dishonest or selfish motive and presented plentiful evidence of his good character and reputation apart from the charged misconduct, including testimony from three judges, six current or former law-enforcement officers, and four letters of reference. *See* BCGD Proc.Reg. 10(B)(2)(b) and (e). The board acknowledged that Simon's

---

[4] Effective January 1, 2015, the aggravating and mitigating factors previously set forth in BCGD Proc.Reg. 10(B) are codified in Gov.Bar R. V(13), 140 Ohio St.3d CXXIV.

clients "were arguably not harmed by his inaction in their cases," though it did not attribute any aggravating or mitigating effect to that fact.

**{¶ 27}** Having considered Simon's conduct, the applicable aggravating and mitigating factors, and the sanctions imposed for comparable misconduct, the board recommended that we suspend Simon for two years, with 18 months stayed on the condition that he engage in no further misconduct.

**{¶ 28}** The board found that but for Simon's prior discipline, the facts of this case were strikingly similar to *Lorain Cty. Bar Assn. v. Godles*, 128 Ohio St.3d 279, 2010-Ohio-6274, 943 N.E.2d 988. After filing a personal-injury action on behalf of a client, Godles elected to voluntarily dismiss the case rather than respond to discovery requests, a motion to compel discovery, and a court order to compel discovery. *Id.* at ¶ 5-6. Godles claimed that he called and wrote to the client to advise him of his intent to withdraw from the representation and voluntarily dismiss the case, but the client testified that the conversation never occurred and that he never received the letter. *Id.* at ¶ 7. Despite the conflicting testimony and credibility issues of the witnesses, we found that Godles did "very little" work and failed to fully communicate with the client in violation of Prof.Cond.R. 1.4(a)(1) through (5), and failed to advise the client that he did not carry professional liability insurance in violation of Prof.Cond.R. 1.4(c). *Id.* at ¶ 12, 14. And we publicly reprimanded him for that conduct. *Id.* at ¶ 18.

**{¶ 29}** In *Disciplinary Counsel v. Turner*, 140 Ohio St.3d 109, 2014-Ohio-3158, 15 N.E.3d 851, we imposed a fully stayed two-year suspension on an attorney who deposited personal funds into his client trust account, used the account only to pay his personal and business expenses, and failed to cooperate in the disciplinary process. While Turner's misconduct is not similar to Simon's, the panel noted that the aggravating factors of prior discipline and an initial failure to cooperate in the disciplinary process are comparable to Simon's prior discipline and failure to acknowledge the wrongful nature of his conduct, *see id.* at ¶ 16-18.

**{¶ 30}** The panel also noted that while we have imposed actual suspensions from the practice of law in cases involving the neglect of client matters, those cases involved dishonest conduct, which has not been proven here. *See, e.g.*, *Medina Cty. Bar Assn. v. Malynn*, 131 Ohio St.3d 377, 2012-Ohio-1293, 965 N.E.2d 299 (imposing a two-year suspension with six months stayed for misconduct including the failure to preserve the identity of client funds, failure to reasonably communicate with a client, failure to cooperate in multiple disciplinary investigations, and conduct involving dishonesty, fraud, deceit, or misrepresentation); *Toledo Bar Assn. v. Harvey*, 141 Ohio St.3d 346, 2014-Ohio-3675, 24 N.E.3d 1106 (imposing a two-year suspension with six months stayed for an attorney's failure to provide competent representation, failure to reasonably consult with a client, several client trust account violations, conduct prejudicial to the administration of justice, and failure to cooperate in the ensuing disciplinary investigation).

**{¶ 31}** Comparing the facts of this case to *Godles*, *Turner*, *Malynn*, and *Harvey*, the panel and board recommend that we suspend Simon from the practice of law for two years, with 18 months stayed on the condition that he commit no further misconduct.

**{¶ 32}** Simon objects to the board's recommended sanction, arguing that it failed to accord any mitigating effect to his clients not suffering harm as a result of his misconduct, and that it failed to acknowledge his full and free disclosure in connection with this matter. He also contends that the board should have accorded greater weight to his character evidence given the stature of the witnesses who testified on his behalf and that he should not receive a sanction greater that a fully stayed suspension.

**{¶ 33}** We reject Simon's invitation to reconsider the board's assessment of the applicable aggravating and mitigating factors. Nonetheless, we conclude that the sanction recommended by the board is not consistent with the sanctions

imposed in the two cases that the board found to be most instructive—*Godles* and *Turner*. Comparing Simon's misconduct and the applicable aggravating and mitigating factors to those cases, we believe that his sanction should be greater than the public reprimand imposed in *Godles* but less than the fully stayed two-year suspension imposed in *Turner*. Therefore, we conclude that the proper sanction for Simon's misconduct is a six-month suspension, fully stayed on the condition that he commit no further misconduct.

**{¶ 34}** Accordingly, we overrule Simon's first assignment of error, sustain Simon's second assignment of error in part, and suspend him from the practice of law in Ohio for six months, fully stayed on the condition that he commit no further misconduct. If Simon engages in additional misconduct, the stay will be lifted and he will serve the entire six-month suspension. Costs are taxed to Simon.

Judgment accordingly.

PFEIFER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'CONNOR, C.J., and O'DONNELL and LANZINGER, JJ., dissent and would suspend the respondent for 24 months with 18 months stayed.

_____

Scott J. Drexel, Disciplinary Counsel, and Stacy Solochek Beckman and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Richard C. Alkire Co., L.P.A., Richard C. Alkire, and Dean C. Nieding, for respondent.

_____