[Cite as *Holfinger v. Stonespring/Carespring, L.L.C.*, 2016-Ohio-7982.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

RICHARD HOLFINGER : 
: Appellate Case No. 27091
     Plaintiff-Appellant :
: Trial Court Case No. CVI 15-1238
v. :
: (Civil Appeal from
STONESPRING/CARESPRING, L.L.C. :   Vandalia Municipal Court)
:
     Defendant-Appellee :
:

. . . . . . . . . . .

# O P I N I O N

Rendered on the 2nd day of December, 2016.

. . . . . . . . . . .

RICHARD HOLFINGER, 1990 Woodcliffe Drive, Troy, Ohio 45373
     Plaintiff-Appellant, *pro se*

JOSHUA F. DeBRA, Atty. Reg. No. 0083267, Calderhead, Lockemeyer & Peschke, 6281
Tri-Ridge Boulevard, Suite 210, Loveland, Ohio 45150
     Attorney for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiff-Appellant, Richard Holfinger, appeals from a judgment rendered in favor of Defendant-Appellee, Stonespring/Carespring, LLC. ("Stonespring"), in the amount of $2,335.84, plus interest and costs. In support of his appeal, Holfinger contends that the trial court erred by failing to be knowledgeable about a "Medicare Advanced Beneficiary Notification (ABN)."

{¶ 2} We conclude that the trial court did not err in awarding judgment to Stonespring on its counterclaim for damages. Holfinger failed to properly support his assignment of error as required by App.R. 16(A)(7), and we are overruling the assignment of error on that basis. Even if Holfinger had properly complied with the Ohio Appellate Rules, the trial court made factual findings that Holfinger failed to properly challenge in the trial court. Accordingly, the judgment of the trial court will be affirmed.

I. Factual Background

{¶ 3} On October 1, 2015, Richard Holfinger filed a small claims action in Vandalia Municipal Court against Stonespring. Holfinger alleged that he had been a patient at Stonespring from November 11, 2013, until December 13, 2013, and that Stonespring had attempted to collect $2,600 from him. He stated that his insurance agent told him that he did not owe the money and that Stonespring owed him $755. He, therefore, asked for that amount. This was the extent of Holfinger's complaint.

{¶ 4} On October 30, 2015, Stonespring filed an answer and counterclaim. The counterclaim contained three counts: judgment on an account; unjust enrichment; and breach of contract. According to the counterclaim, Holfinger was admitted as a resident

at Stonespring from November 11, 2013, to December 14, 2013, and had signed an admission agreement. He was allegedly provided services and failed to pay for them. Stonespring claimed Holfinger owed $2,335.84, plus post-judgment interest of 18%, and attorney fees and costs. Neither the complaint nor the counterclaim mentioned Medicare.

{¶ 5} Stonespring attached the following items to the counterclaim: (1) the Resident Agreement; (2) a copy of Holfinger's account; and (3) the affidavit of Nancy Burden, the records custodian for Stonespring.

{¶ 6} Stonespring filed a motion for default judgment in December 2015, based on Holfinger's failure to answer the counterclaim, but the trial court denied the motion. Trial was then held before a magistrate on December 17, 2015. At the hearing, the magistrate heard testimony from Holfinger and from Nancy Burden, Stonespring's collection manager.

{¶ 7} Holfinger testified that he entered Stonespring as a patient on November 13, 2013, after a total hip replacement. Holfinger indicated that he made a partial payment of $630 on December 2, 2013, and paid another $1,345 in April 2014. About a year later, he received another bill for $2,607.32. After unsuccessfully challenging the bill with Stonespring employees, Holfinger was told to contact his insurer, Anthem. According to Holfinger, an insurance agent told him that he did not owe Stonespring, but had overpaid it by $755.

{¶ 8} A law firm then sent Holfinger a letter dated September 24, 2015. The letter indicated that from December 5, 2013, until Holfinger's discharge on December 14, 2013, Anthem had denied coverage as not medically necessary, and that all charges incurred

during that time were Holfinger's responsibility. Holfinger Trial Ex. 3. Holfinger was informed at this time that he owed $2,953.00 for room and board, plus ancillary fees of $137.84. After Holfinger was credited with payments he had made, the listed total was $2,335.84.

{¶ 9} Upon receiving another letter from a law firm in December 2015, Holfinger drove to the Anthem Center in Mason, Ohio, and spoke with Joseph Klein, the executive counsel of litigation. According to Holfinger, Klein said that the Anthem contract for network providers like Stonespring states that if a payor is denied coverage due to lack of medical necessity, the provider must show the patient an estimate for self-pay charges before service begins or the patient is not liable for any charges.

{¶ 10} Nancy Burden then testified. She stated that she takes care of private accounts and takes them to the next step when they are uncollectible at the nursing home. Holfinger indicated that she had knowledge of Holfinger's account and had reviewed the correspondence Holfinger provided, as well as the insurance denials. She stated that Holfinger came into the nursing home under an Anthem policy, and then he was "cut" by Anthem and owed privately. She identified the Resident Admission Agreement and the attached schedule, which identified $327 as the daily rate for staying at the facility. Burden further noted that Holfinger agreed to be responsible for that amount in the event his coverage terminated.

{¶ 11} Burden also identified Stonespring Ex. B, which reflected the charges for which Holfinger was liable due to the denial. This exhibit listed a charge beginning December 5, 2013, for room and board of $2,953.00, plus incidental expenses, for a total amount owed of $3,090.84. After Holfinger's payments were credited, $2,335.84 was

due.

**{¶ 12}** During Burden's testimony, the Magistrate asked several questions. Specifically, the following exchange occurred:

Magistrate: Okay. And then I also, just from briefly looking at the Resident Admission Agreement, it talks about Medicare and Medicaid, I, I assume from what you've said that none of that applies to this case, is that correct?

Ms. Burden: *No, it does not.*

Magistrate: Okay.

Ms. Burden: Just the . . .

Magistrate: Would you agree with that, Mr. Holzfaster [sic], we're not talking about Medicaid or . . .

Mr. Holfinger: No, it's because Anthem manages my Medicare.

Magistrate: Understood, okay. Alright, very good. Any, anything else, I'm done with what I had. Anything else?

(Emphasis added.) Transcript of Trial Proceedings, p. 23.

**{¶ 13}** After hearing the testimony, the Magistrate issued a decision on December 17, 2015, concluding that Stonespring was entitled to recover $2,335.84, plus $664.10 in attorney fees, and 18% interest from the date of judgment. A total judgment of $3,000 was recommended because that was the limit of the small claims jurisdiction.

**{¶ 14}** The Magistrate apparently did not credit Holfinger's statement about Medicare because the Magistrate relied on paragraph 3(E)(iii) of the Resident Admission Agreement, which excludes Medicare as a factor. *See* Magistrate's Decision, Doc. #13,

p. 4.

**{¶ 15}** The Resident Admission Agreement states in paragraph 2 that the Facility will provide the resident with basic room and board and routine nursing services, which are referred to as "General Services." This paragraph further indicates that these services are included in the Facility's daily rate, which is noted in Attachment A to the agreement as $327 per day.

**{¶ 16}** Paragraph 2 of the agreement defines routine nursing care and lists items that are not included. This paragraph goes on to state that: "However, the Resident is financially responsible for any additional charges not covered by a third party payor (e.g., Medicare, Medicaid, or private insurance). If the scope of the General Services covered by the Facility's Daily Rate is not clearly understood by the Resident, the Resident must contact the Facility's business office immediately." Stonespring Ex. A, p. 2.

**{¶ 17}** Medicare coverage is discussed in paragraph 3(B), and Medicaid coverage is discussed in paragraph 3(C) and (D). Regarding Medicare coverage, paragraph 3(B) states that:

(i) A Resident who is a Medicare Beneficiary is responsible for payment of all services and supplies provided to the Resident by the Facility. The Facility shall bill Medicare on the Resident's behalf for all Medicare covered services and supplies provided to the Resident. The Resident shall pay the Facility all required Medicare co-insurance and deductible amounts (including, without limitation, any co-pay or deductibles for therapy services and all other services covered under Part B of the Medicare program) together with fees for all non-covered items and

services provided by the Facility no later than the first (1st) day of each month unless the Resident reaches a different agreement in writing with the Facility.

(ii) The Resident understands that Medicare coverage and eligibility is established by federal guidelines which may change from time to time. The Resident shall apply promptly for any applicable Medicare benefits. The Facility may assist the Resident in applying for Medicare coverage; however, the Resident acknowledges that the determination of Medicare coverage is made by the federal government and not the Facility. The Resident shall be required to pay the Facility at the private-pay rate for all charges incurred by the Resident if the Resident's application for Medicare coverage is denied or if the Resident's eligibility for Medicare coverage expires. The Resident shall not insist that the Facility bill Medicare for the Facility's services if the Resident does not believe in good faith that the Facility's services are covered under the Medicare program.

Stonespring Ex. A at p. 3.

{¶ 18} Notably, the Magistrate did not rely on paragraph 3(B) in making a decision. Instead, the Magistrate relied on paragraph 3(E)(iii), which is in the section of the agreement that discusses "Billing Policies and Late Charges." Paragraph 3(E)(iii) states as follows:

The Facility shall make every effort to bill private insurance providers. The Facility cannot guarantee their willingness to pay the Facility directly. If the resident is covered by a health insurance plan,

health maintenance organization (HMO), Veteran's Administration contract, or other third party payor (*except Medicare or Medicaid*), the Resident shall pay for any costs not paid by the third party payor. In order to qualify for this service, the Resident shall sign an Assignment of Payment Agreement provided by the Facility.

(Emphasis added.) *Id.* at p. 5.

{¶ 19} In concluding that Holfinger was responsible for the charges incurred, the Magistrate noted that under paragraph 3(E)(iii), " 'the Resident [i.e., Plaintiff] shall pay for any costs not paid by the third party payor.' " (parenthetical in original). Magistrate's Decision, Doc. #13 at p. 4, quoting Stonespring Ex. A, paragraph 3(E)(iii). If the Magistrate had concluded that Medicare applied, the Magistrate would have referred to the part of the Resident Admission Agreement that pertains to Medicare, not a part that specifically excludes Medicare and Medicaid.

{¶ 20} The Magistrate also rejected Holfinger's contention that he was not liable despite the above language because of what he was told by Anthem's counsel, and was also not liable because he was not provided with a written estimate of the charges incurred. In this vein, the Magistrate stated that:

Unfortunately for the Plaintiff, the Magistrate finds as a matter of law that the Plaintiff's argument that he is not personally liable for the uncovered charges incurred for the period of December 5 through December 14, 2013 is without merit, and must be rejected. Initially, the Magistrate finds that, despite the admonition of Ohio Evidence Rule 101(C)(8) that the Rules of Evidence do not apply in Small Claims proceedings, the Plaintiff's testimony

regarding what he was told by Anthem's counsel is rank hearsay, and *the Plaintiff has introduced no legal authority or documents or other independent source to support what he was allegedly told by Anthem's counsel.* Secondly, and more importantly, however, the Plaintiff did in fact receive written notice of the charges he was going to be responsible for by virtue of his execution of the "Daily Rate Determination Schedule & Co-Pay" attached to the Resident Admission Agreement (last page of Defendant's Ex. A), which expressly advised the Plaintiff that he was going to be charged $327 per day for the duration of his stay. Based upon these findings, the Magistrate finds that the Plaintiff is liable for the charges covering the period of time his health insurance denied coverage due to "lack of medical necessity," i.e. from December 5 through December 14, 2013.

(Emphasis added.) Magistrate's Decision, Doc. #13 at p. 5.

{¶ 21} The last page of Ex. A is labeled "Attachment A, Admission Agreement, Daily Rate Determination Schedule & Co-Pay." It provides that "Your Daily Rate is: $327 per day." Holfinger signed this agreement as "Resident/Responsible Party." Stonespring Ex. A, Attachment A, at p. 1. The amount charged Holfinger for room and board was about $327 ($2,953.00 divided by 9 days is $328.11).

{¶ 22} The Resident Admission Agreement also contained an acknowledgement by the resident that he or she had been given a Resident Information Handbook, which contained information regarding the resident's rights under federal and state law. Ex. A, paragraph (E)(v), at p. 7.

{¶ 23} Holfinger filed objections to the Magistrate's Decision on December 30,

2015. His objection stated that he disputed the findings of fact and would be submitting information to support what had been deemed "rank hearsay." Specifically, Holfinger indicated that he would verify the information he received from the Anthem attorney "by deposition or letter."[1]

**{¶ 24}** On February 18, 2016, the trial court filed a notice indicating that the transcript of the trial had been filed, and gave Holfinger 14 days to file supplemental objections. Holfinger failed to timely submit supplemental objections. On March 11, 2016, Holfinger filed an untimely statement, which the court refused to review because it was received after all the response time had expired.[2]

**{¶ 25}** On March 23, 2016, the trial court filed a decision and entry adopting the decision of the Magistrate in its entirety, with the exception of the attorney fee award, for which the court found insufficient evidence. The court, therefore, awarded Stonespring $2,335.84, interest of 18% per annum from the date of the judgment, and costs. Holfinger timely appealed, pro se, from the judgment.

## II. Sole Assignment of Error

**{¶ 26}** In his brief, Holfinger raised only one assignment of error, as follows:

---

[1] The local rules of the Vandalia Municipal Court do not permit depositions or interrogatories to be taken in small claims cases "unless otherwise directed by the Court." Loc.R. 23(D) of the Vandalia Municipal Court Rules of Practice. There is no evidence in the record that Holfinger asked permission to take a deposition or that the court directed any deposition to be taken.

[2] In this statement (which the trial court excluded and did not consider), Holfinger said (without any supporting verification) that what he had previously tried to explain was called an "ABN" or "advanced beneficiary notice." Holfinger stated he had never received an ABN and attached a Medicare booklet.

The Trial Court Erred in Allowing the Defendants [sic] Argument to Prevail.

**{¶ 27}** Under this assignment of error, Holfinger raises two issues. The first is whether the court erred by allowing the admission agreement to be part of the required documentation. Holfinger makes no argument concerning this point, and we, therefore, will disregard it. *See* App.R.16(A)(7), which requires appellants to include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 12(A)(2) also states that "[t]he court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."

**{¶ 28}** "When an appellant fails to include in her brief an argument in compliance with the requirements of App.R. 16(A)(7), a court of appeals properly disregards that assignment of error." *Stemple v. Dunina*, 2d Dist. Miami No. 04CA40, 2005-Ohio-5590, ¶ 32, citing App.R. 12(A). (Other citation omitted.) *See also, e.g.*, *Frisch v. Restaurant Mgt., Inc.*, 1st Dist. Hamilton No. C-140444, 2015-Ohio-859, ¶ 15 (refusing to consider arguments about which appellant failed to make any argument); *State v. Hale*, 7th Dist. Monroe No. 04 MO 14, 2005-Ohio-7080, ¶ 9-11 (disregarding assignment of error relating to statute's alleged unconstitutionality where appellant's argument was only five sentences long and contained no citation of authority on the issue*); Sizemore v. Esis, Inc.*, 9th Dist. Medina No. 11CA0107-M, 2012-Ohio-4004, ¶ 18 (declining to address

assignment of error that was not properly developed).

{¶ 29} "The burden of affirmatively demonstrating error on appeal rests solely with the appealing party * * *." (Citations omitted.) *Shumate v. City of Gahanna*, 10th Dist. Franklin No. 02AP-881, 2003-Ohio-1329, ¶ 6. *Accord PNC Bank, N.A. v. Craig*, 2d Dist. Montgomery No. 25010, 2012-Ohio-5410, ¶ 6.

{¶ 30} In *Shumate*, the court of appeals stressed that "[i]t is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error * * * [,]" and that "[i]t is also not appropriate for this court to construct the legal arguments in support of plaintiff's appeal." (Citations omitted.) *Id.* *See also, e.g., Mayer v. Midland Natl. Life Ins. Co.*, 2d Dist. Montgomery No. 24954, 2012-Ohio-3721, ¶ 21 (finding assignment of error was without merit because appellant failed to make any argument in support of it); *Lesher v. McDermott*, 2d Dist. Miami No. 02CA0025, 2003-Ohio-458, ¶ 12; *Barry v. Barry*, 2d Dist. Montgomery No. 25387, 2013-Ohio-181, ¶ 8.

{¶ 31} In *Craig*, we commented that the appellant, "as a pro se civil litigant, 'is bound by the same rules and procedures as litigants who retain counsel.' " *Craig* at ¶ 6, quoting *Miner v. Eberlin*, 7th Dist. Belmont No. 08-BE-21, 2009-Ohio-934, ¶ 11. Pro se litigants "are not to be accorded greater rights and must accept the results of their own mistakes and errors." (Citation omitted.) *Meyers v. First Nat. Bank of Cincinnati*, 3 Ohio App.3d 209, 210, 444 N.E.2d 412 (1st Dist.1981). We have frequently cited *Meyers* in connection with this proposition. *See, e.g., Great Seneca Fin. Corp. v. Lee*, 2d Dist. Montgomery No. 21134, 2006-Ohio-2123, ¶ 5; *Harshman Dynasty, L.L.C. v. Mason*, 2d Dist. Montgomery No. 25873, 2014-Ohio-1108, ¶ 27. Accordingly, we refuse to consider Holfinger's first issue, based on his failure to comply with the Ohio Appellate Rules.

{¶ 32} The second issue that Holfinger listed in his brief is whether the trial court erred by failing to be knowledgeable about the required "Medicare Advanced Beneficiary Notification (ABN)." Holfinger makes no argument on this point, nor does he cite any authority. Again, pursuant to the authority cited above, we will disregard this issue, as Holfinger failed to comply with appellate requirements. As noted by the Tenth District Court of Appeals, it is "not appropriate for this court to construct the legal arguments in support of an appellant's appeal." *State ex rel. Petro v. Gold*, 166 Ohio App.3d 371, 2006-Ohio-943, 850 N.E.2d 1218, ¶ 94 (10th Dist.). *Accord Union Bank Co. v. Lampert*, 3d Dist. Auglaize No. 2-13-32, 2014-Ohio-4427, ¶ 21; *Stanley Miller Constr. Co. v. Ohio School Facilities Comm.*, 192 Ohio App.3d 676, 2011-Ohio-909, 950 N.E.2d 218, ¶ 8 (10th Dist.). Accordingly, in view of the preceding discussion, Holfinger's sole assignment of error is overruled.

{¶ 33} However, even if we were to consider any alleged error, it is without merit. "An abuse-of-discretion standard * * * is the appellate standard of review when reviewing a trial court's adoption of a magistrate's decision." *State Farm Mut. Auto. Ins. Co. v. Fox*, 182 Ohio App.3d 17, 2009-Ohio-1965, 911 N.E.2d 339, ¶ 11 (2d Dist.). "When an appellate court reviews a trial court's adoption of a magistrate's report for an abuse of discretion, such a determination will only be reversed where it appears that the trial court's actions were arbitrary or unreasonable." *Id.*, citing *Proctor v. Proctor*, 48 Ohio App.3d 55, 60-61, 548 N.E.2d 287 (3d Dist.1988).

{¶ 34} In *Fox*, we also noted that "[p]resumptions of validity and deference to a trial court as an independent fact-finder are embodied in the abuse-of-discretion standard." *Id.*, citing *Dayton v. Whiting*, 110 Ohio App.3d 115, 673 N.E.2d 671 (2d Dist.1996). As

an additional matter, "when we review 'a trial court's judgment following a bench trial, [we are] "guided by the presumption that the trial court's findings are correct." ' " *Fed. Ins. Co. v. Fredericks*, 2015-Ohio-694, 29 N.E.3d 313, ¶ 21 (2d Dist.), quoting *Gold* at ¶ 81. (Other citation omitted.)

**{¶ 35}** When Holfinger initially objected to the magistrate's decision, he did not mention Medicare or anything pertaining to that subject. Instead, he objected to the magistrate's conclusion about "rank hearsay," and indicated that he would verify the insurance agent's statement through a deposition or letter. He failed to further verify the agent's statement, and also failed to timely supplement his objections after the transcript was filed.

**{¶ 36}** Ohio Civ. R. 53(D)(3)(b)(iv) states that:

Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

**{¶ 37}** Holfinger did not object to the magistrate's factual finding that Medicare was not involved. This finding is encompassed in the magistrate's use of paragraph 3(E)(iii) of the Resident Admission Agreement, which refers to billing of private insurance providers, and the requirement that a resident shall pay costs not paid by a third party payor, "except Medicare or Medicaid." Stonespring Ex. A, paragraph 3(E)(iii), at p. 5. The finding was supported by the testimony of Nancy Burden, who specifically stated that Medicare and Medicaid did not apply.

{¶ 38} Because Holfinger did not object to this factual finding, he waived all but plain error, and our review is limited to a plain error analysis. (Citation omitted.) *Corliss v. Corliss*, 2d Dist. Montgomery No. 25098, 2012-Ohio-3715, ¶ 7.

{¶ 39} "In appeals of civil cases the courts apply the plain-error test 'with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *In re L.H.*, 183 Ohio App.3d 505, 2009-Ohio-3046, 917 N.E.2d 829, ¶ 23 (2d Dist.), quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 124, 512 N.E.2d 640 (1987). *See also Olympic Realty v. Zaleski*, 10th Dist. Franklin No. 11AP-971, 2013-Ohio-1245, ¶ 17 (rejecting application of plain error and finding no manifest miscarriage of justice, where appellant "had an opportunity to present specific and meaningful objections to the magistrate and failed to do so.").

{¶ 40} There is no manifest miscarriage of justice based on alleged failure to provide a Medicare notice, where the testimony of one party indicated definitively that Medicare and Medicaid were not involved in the case.

{¶ 41} "In a small-claims proceeding, the trial court is the trier of fact and has the duty to determine the credibility of the witnesses." *McCain v. Brewer*, 2d Dist. Darke No. 2014-CA-8, 2015-Ohio-198, ¶ 15. "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *Merriman v. Merriman*, 2d Dist. Darke No. 2010-CA-09, 2011-Ohio-128, ¶ 16, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). We have stressed that "[t]his court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict." *Id.* at ¶ 18, citing *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct.

24, 1997).

**{¶ 42}** In order to find that Medicare applied, we would have to conclude that Nancy Burden lied or was mistaken on this issue. Under our standard of review, that is not a decision an appellate court can make on this record. Burden specifically stated that Medicare and Medicaid did not apply to the case. Although Holfinger disagreed, the Magistrate found Burden more credible. There was no other evidence considered by the Magistrate that contradicted the Magistrate's determination.

**{¶ 43}** Holfinger brought a claim for damages, for which he bore the burden of proof. He also was required to defend against the counterclaim, and bore the burden of proof of any defenses raised. " 'It is the duty of a party on whom the burden of proof rests to produce evidence which furnishes a reasonable basis for sustaining his claim.' " *Clark v. Pfizer, Inc.*, 87 Ohio App.3d 313, 316, 622 N.E.2d 351 (6th Dist.1993), quoting *Stevens v. Indus. Commission*, 145 Ohio St. 198, 61 N.E.2d 198 (1945), paragraph three of the syllabus. *See also Neitman v. Miller*, 2d Dist. Montgomery No. 9609, 1986 WL 6106, *2 (May 29, 1986); *Collins v. Ohio State Racing Comm.*, 10th Dist. Franklin No. 03AP-587, 2003-Ohio-6444, ¶ 25. Holfinger's testimony did not establish his right to recover on his claim that he was owed $755, and he did not either file a reply to the counterclaim or assert any defenses on the record at trial. In contrast, based on the testimony of Nancy Burden and the documents Stonespring submitted, Stonespring established a right to recover on its claim.

**{¶ 44}** As was noted, "[i]n a small-claims proceeding, the trial court is the trier of fact and has the duty to determine the credibility of the witnesses." *McCain*, 2d Dist. Darke No. 2014-CA-8, 2015-Ohio-198, at ¶ 15. "In a wide variety of situations," the

Supreme Court of Ohio has "affirmed that factual determinations are best left to those who see and hear what goes on in the courtroom." (Citations omitted.) *State v. Cowans*, 87 Ohio St.3d 68, 84, 717 N.E.2d 298 (1999). *See also Disciplinary Counsel v. Simon*, 146 Ohio St.3d 44, 2016-Ohio-535, 51 N.E.3d 605, ¶ 16 (noting that even though the Supreme Court of Ohio is not bound by the findings of the Board of Commissioners on Grievances and Discipline, the panel members "are in a better position to assess the credibility of the witnesses, because they are able to see and hear the witnesses firsthand.") (Citations omitted.) For that reason, the court emphasized that it ordinarily defers "to the panel's credibility determinations unless the record weighs heavily against those findings." *Id.*

{¶ 45} We have taken the same position, stressing that " '[t]he decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.' " *Jenkins v. Jenkins*, 2012-Ohio-4182, 975 N.E.2d 1060, ¶ 19 (2d Dist.), quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). In view of the testimony before the magistrate, the record does not weigh heavily against the magistrate's findings.

{¶ 46} Furthermore, "[a]n appellate court is limited to reviewing the record, and will disregard alleged facts that are not of record in the trial court." (Citations omitted.) *Chase Manhattan Mtg. Corp. v. Locker*, 2d Dist. Montgomery No. 19904, 2003-Ohio-6665, ¶ 10. *Accord Discover Bank v. Pierce*, 2d Dist. Montgomery No. 25755, 2014-Ohio-625, ¶ 11 (" 'An appellate court's review in a direct appeal is limited to the materials in the record and the facts and evidence presented to the trial court.' ") (Citation omitted.)

{¶ 47} The evidence in the record includes the testimony and exhibits that were

admitted at trial, not documents the trial court rejected and declined to consider because they were untimely filed. "An appeal is not an opportunity to retry the case." *Yates v. Kanani*, 2d Dist. Montgomery No. 23492, 2010-Ohio-2631, ¶ 24.

**{¶ 48}** "Civ.R. 53(D)(4)(d) requires only that the trial court rule on timely filed objections." *Ramsey v. Ramsey*, 10th Dist. Franklin No. 13AP-840, 2014-Ohio-1921, ¶ 27. Notably, Holfinger has not asserted on appeal that the trial court abused its discretion in rejecting his untimely-filed supplemental objections. *See, e.g., Theodore v. Theodore*, 10th Dist. Franklin No. 14AP-718, 2015-Ohio-2657, ¶ 16 (stating that "trial courts have broad discretion in reviewing untimely filed objections * * *.")

**{¶ 49}** Furthermore, while Holfinger did not raise the trial court's rejection of his untimely objections on appeal, Holfinger was not actually attempting to submit a supplemental objection; he was attempting to present additional evidence that he failed to supply at the hearing. We have said that "[w]hen ruling on objections, the trial court may hear additional evidence, but it may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." *Carpenter v. Johnson*, 196 Ohio App.3d 106, 2011-Ohio-4867, 962 N.E.2d 377, ¶ 15, fn.3 (2d Dist.), citing Civ.R. 53(D)(4)(b). Holfinger made no attempt to provide this demonstration in the trial court, and there is nothing in the record to indicate that he could not have produced any such alleged evidence at trial.

**{¶ 50}** Accordingly, even if we had not rejected Holfinger's alleged assignment of error due to his failure to properly comply with appellate rules, there is no merit in his contentions, whatever they may be. The factual issue pertaining to Medicare was

decided in the trial court, and we give deference to the trial court's credibility determinations. In addition, Holfinger failed to timely supplement his objections to the magistrate's decision. Even then, the matter he untimely attempted to file was not pertinent to his stated objection, and he failed to establish any reason why he could not have produced any such evidence at trial. Again, pro se litigants are held to the same standard as other litigants, and "must accept the results of their own mistakes and errors." *Meyers*, 3 Ohio App.3d at 210, 444 N.E.2d 412; *Craig*, 2d Dist. Montgomery No. 25010, 2012-Ohio-5410, at ¶ 6.

{¶ 51} Accordingly, Holfinger's sole assignment of error is overruled.

### III.  Conclusion

{¶ 52} Holfinger's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FAIN, J., concurs.

HALL, J., concurring:

{¶ 53} I concur with the affirmance of the trial court decision in this case but write separately to express my view of the evidence that was before the court, and importantly, the evidence that was not.

{¶ 54} I believe it was not proven at trial that Medicare rules applied here. I don't doubt that Holfinger had Medicare coverage but that coverage was unquestionably managed through an Anthem plan. When Nancy Burden testified that Medicare did not apply, that could have meant that Anthem procedure and appeal procedure applied, and

had been exhausted, or that Medicare procedure was inapplicable, or that Medicare procedure had been satisfied. We do not know and therefore the Magistrate's conclusion should stand.

{¶ 55} I also note that Holfinger did not specifically raise the lack of an ABN defense until after the trial. In this regard, at trial Holfinger said: "I'd like to mention that the, the last letter I signed on December 2, which was informing me that the cov* * *the insurance coverage was due to lapse on the 4th [of December]. It said may, it said not for certain, and at that point there was another appeal in process." Transcript of Trial Proceedings, p. 26. Had Holfinger raised the ABN defense at trial, Stonespring may have presented whatever this notice is that Holfinger signed notifying him that coverage was going to expire, thereby satisfying the ABN requirement, if it had been determined that such a defense was applicable.

{¶ 56} On this record, I concur.

. . . . . . . . . . . . .


Copies mailed to:
Richard Holfinger
Joshua F. DeBra
Hon. Cynthia M. Heck